**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No.  1:20-cv-01235-RM-MEH

DANIEL COCHRAN,

          Plaintiff,

v.

HEWLETT-PACKARD COMPANY; HP ENTERPRISE SERVICES, LLC; HEWLETT-PACKARD ENTERPRISE CO.; HP INC.; and DXC TECHNOLOGY SERVICES, LLC,

          Defendants.

---

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)**

---

Under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants HP Enterprise Services, LLC ("ES"), Hewlett Packard Enterprise Company ("HPE"), HP Inc. (formerly known as Hewlett-Packard Company ("HP Co.")) ("HP Inc."), and DXC Technology Services LLC ("DXC TS") move to dismiss Plaintiff Daniel Cochran's Third Amended Complaint (ECF 79) ("TAC"). The parties have conferred via telephone and email under **Civ. Practice Standard IV.N.2.a**, but did not reach agreement. Cochran opposes the Motion.

**I.     INTRODUCTION**

Cochran purports to bring a variety of age discrimination claims under federal and state law in what represents one of _six_ attempts by his counsel to pursue age discrimination claims jointly against several of the Defendants. Each of his claims should be dismissed, either for lack of subject matter jurisdiction or for failure to state a claim.

Lacking any facts connecting Defendants to each other, Cochran lumps them together under the fictitious label "HP" even though they are entirely separate, independent companies without any indicia of shared control. Cochran uses the "HP" label in an attempt to mask his lack of standing against all but one Defendant. Though Cochran was employed, selected for workforce

reduction, and terminated by HPE in November 2019, he seeks to bring claims against companies not involved in his termination (HP Inc. (formerly HP Co.), DXC TS, and ES (collectively, the "Non-Employer Defendants")). This Court should dismiss Cochran's claims against the Non-Employer Defendants for lack of subject matter jurisdiction. Likewise, Cochran has failed to plead the required elements of his Age Discrimination in Employment Act ("ADEA") and Colorado Anti-Discrimination Act ("CADA") claims. And, Cochran has failed to properly plead his wrongful discharge claim under Colorado common law. Moreover, to the extent he still pursues claims regarding the enforceability of the Waiver and Release Agreement ("RA"), Cochran did not sign that agreement and plainly lacks standing to challenge it. Defendants respectfully request that the Court dismiss the TAC in its entirety.

## II.   PROCEDURAL BACKGROUND

Cochran filed his original complaint on May 1, 2020, asserting purported "class" claims of age discrimination under the ADEA and Colorado state law against Defendants HP Co., HP Inc., ES, DXC TS, and "Perspecta Enterprise Solutions." ECF 1. Cochran filed a First Amended Complaint ("FAC") on May 21, 2020 that, among other things, removed Perspecta Enterprise Solutions, and added HPE, as a Defendant. ECF 15. Following meet and confer efforts regarding the FAC, Cochran filed his Second Amended Complaint ("SAC") on September 15, 2020.

The Defendants moved to dismiss Cochran's SAC on September 29, 2020, and Cochran opposed the motion. *See* ECF 53, 59, 60. While that motion was pending, the Court ordered the administrative closure of this action on March 4, 2021, subject to reopening for good cause, based upon the "first-to-file" rule. ECF 65. Cochran filed a motion to reopen the case on April 2, 2021, proposing to amend his complaint to pursue only individual claims, which the Court denied on February 15, 2022. ECF 66, 70. Cochran again moved to administratively reopen the case on

March 2, 2022. ECF 71. The Court ordered the matter be administratively reopened on April 29, 2022. ECF 77. Cochran filed the TAC that is the subject of this motion on June 7, 2022. ECF 79.

Cochran's TAC removed claims for collective and class relief and his allegations under the Colorado Consumer Protection Act, but otherwise largely mirrors his SAC. The TAC asserts three individual claims, each alleging age discrimination in connection with his termination in a workforce reduction ("WFR") and/or the alleged failure to hire or re-hire him after his termination: (1) age discrimination under the ADEA (TAC ¶¶ 71–83); (2) age discrimination under CADA (*id.* ¶¶ 84–93); and (3) wrongful termination in violation of public policy under Colorado state law (*id.* ¶¶ 94–101). He continues to join the Defendants together under the fictitious label "HP" even though the four existing Defendants – HP Inc. (formerly named HP Co.), HPE, DXC TS, and ES – are entirely unrelated, independent companies without any indicia of shared control. Cochran relies on this fiction in lieu of any facts connecting Defendants during the applicable time period. For example, Cochran alleges he was employed, and subsequently laid off, by "HP." TAC ¶ 29. At the time of his termination, however, he was employed, selected for workforce reduction, and terminated only by HPE – a fact proven by documents his counsel filed in another matter. *Forsyth, et al. v. HP Inc., et al.*, No. 5:16-cv-04775-EJD (N.D. Cal. 2016) ("*Forsyth*"), ECF 384-1, Ex. B (WFR Materials from HPE to Cochran). Cochran alleges he filed a charge of age discrimination against HP Co., HP Inc., and HPE with the Equal Employment Opportunity Commission ("EEOC") and the Colorado Civil Rights Division ("CCRD") on April 10, 2020. TAC ¶ 17.

## III.   FACTUAL BACKGROUND

On November 1, 2015, HP Co. changed its name to HP Inc., and on the same date spun off a new entity, HPE, as an independent publicly traded company. Declaration of Nan Weitzman, ECF 53-1, ¶ 3. At all times relevant to Cochran's claims, HP Inc. and HPE have been entirely separate companies with no shared control over labor relations, employment and/or personnel issues. *Id.* ¶ 4. HP Inc. has not been involved in the employment decisions of HPE or the

management of HPE's personnel, and there has been no ongoing business relationship between HP Inc. and HPE with respect to workforce planning, hiring, or the selection of employees for workforce reduction, termination, or rehire. *Id*. At all times relevant to Cochran's claims, there has been no common control between these entities with respect to management, employment policies, or any other aspect of labor relations. *Id*. Employees at HP Inc. have not had the right to control employees of HPE, and vice versa. *Id*. Meg Whitman, who was the CEO of HP Co., became the CEO of HPE following this spin off. *Id*. ¶ 5. Ms. Whitman remained on HP Inc.'s Board of Directors after the reorganization, but resigned effective July 26, 2017. *Id*.

In April 2017, HPE spun off its "Enterprise Services" business, including ES, and that business unit merged with Computer Sciences Corporation to form DXC Technology Company ("DXC"). Declaration of Ira Katz, ECF 53-2, ¶ 3; Declaration of James L. Gallagher, ECF 53-3, ¶ 3. Effective May 31, 2018, DXC effected a separation and distribution of its U.S. Public Sector business from Enterprise Services LLC. ECF 53-3, ¶ 4. DXC spun off that U.S. Public Sector business unit, which was subsequently merged with two other companies to form Perspecta Inc. *Id.* As part of that spin-merger, Enterprise Services LLC, consisting only of the U.S. Public Sector portion of what had been the Enterprise Services business within DXC, became a subsidiary of Perspecta Inc. *Id.*

At all times relevant to Cochran's claims, HP Inc., DXC TS, and ES have been three entirely separate companies. ECF 53-1, ¶¶ 6–7; ECF 53-2, ¶¶ 5, 7; ECF 53-3, ¶¶ 5, 7. They have not shared any control over labor relations and employment and personnel issues, amongst each other, or with HPE. ECF 53-1, ¶¶ 4, 6-7; ECF 53-2, ¶ 4-5, 7; ECF 53-3, ¶¶ 5-7. HP Inc. has not employed Cochran at any time since November 1, 2015; neither DXC TS nor ES employed Cochran at any time relevant to his claims. ECF 53-1, ¶¶ 8–9; ECF 53-2, ¶ 8; ECF 53-3, ¶ 8.

## IV.    LEGAL STANDARD

Cochran's claims must be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction with respect to the Non-Employer Defendants and Rule 12(b)(6) for failure to allege sufficient facts (as opposed to conclusory allegations) to state a claim.

It is Cochran's burden to establish the Court has subject matter jurisdiction over his claims. *Wilderness Watch v. Ferebee*, 445 F. Supp. 3d 1313, 1319 (D. Colo. 2020) (*citing Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)). "When the Court lacks subject matter jurisdiction over a claim for relief, dismissal is proper under Rule 12(b)(1)." *Id.* A party moving under Rule 12(b)(1) "may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Id.* (*citing Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (*quotation omitted*)). Defendants' evidence contradicts Cochran's conclusory allegations of jurisdiction.

The weight of the authority supports that the existence of an employment relationship is a jurisdictional prerequisite for an ADEA claim such that it should be properly analyzed under Rule 12(b)(1).[1] *See Murphy v. Allstaff Medical Resources, Inc.*, 2017 WL 2224530 (D. Colo. May 22, 2017) ("The Court agrees with the proposition that existence of an employment relationship between or among the parties is a jurisdictional requirement under the FLSA."); the Northern District of California decisions in the *Forsyth* action, 2020 WL 2524517, at *10-13 (dismissing age discrimination claims against HP Inc. and HPE for lack of standing under Rule 12(b)(1) where plaintiffs failed to plead an employment relationship with either entity or facts sufficient to treat

---

[1] Defendants acknowledge that courts in this District have split on whether an employment relationship is a jurisdictional issue in the FLSA context. *See, e.g.*, *Fuentes v. Compadres, Inc.*, 2022 WL 860613, at *8 n.4 (D. Colo. March 23, 2022). But, whether an employment relationship is a jurisdictional issue in the ADEA context is a matter of first impression in this District. Even if the Court in this action concluded that an employment relationship is not a jurisdictional issue, Cochran's claims against the Non-Employer Defendants fail as he has not plead sufficient facts to support these claims as required by Rule 12(b)(6), as discussed, *infra*, in Section V.A.2.

them as a single employer or integrated enterprise) and *Enoh v. Hewlett Packard Enterprise Co., et al.*, 17-cv-04212-BLF, 2018 WL 3377547, at *13 (N.D. Cal. July 11, 2018) (same); and the Supreme Court's rationale in *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006).

In *Arbaugh*, the Supreme Court held that Title VII's fifteen-employee coverage threshold is non-jurisdictional because the threshold is contained within the definitional section of the statute, and the section dealing with the U.S. District Courts' jurisdiction to hear Title VII suits does not contain the coverage requirement or reference "employers" or "employees." *Arbaugh*, 546 U.S. at 512–16. In contrast, as this Court explained in *Murphy* with respect to the Fair Labor Standards Act, the "existence of an employment relationship between or among the parties is a jurisdictional requirement under the FLSA . . . because § 216 uses the terms 'employee' and 'employer' throughout, refers to the employment relationship, and speaks in clear jurisdictional terms, stating that '[a]n action to recover [for] liability ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.'" 2017 WL 2224530, at *3 (quoting 29 U.S.C. § 216(b)). Notably, the ADEA enforcement section provides that "[t]he provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title." 29 U.S.C. § 626(b) (emphasis added). Based on Congress' inclusion of this employee/employer-specific language in the enforcement section of the ADEA, addressing the existence of an employee/employer relationship as a jurisdictional prerequisite to an age discrimination claim is warranted.[2]

---

[2] Defendants' citation to declarations in the record in support of their Rule 12(b)(1) argument is not an attempt to circumvent the Court's Practice Standard limiting a party to one motion for summary judgment absent special circumstances. Rather, Defendants cite the declarations pursuant to the well-settled rule that Rule 12(b)(1) arguments may be supported by such evidence and Defendants' good faith belief that their standing argument is properly raised under Rule 12(b)(1). If the Court finds the standing issue is non-jurisdictional, Defendants respectfully request that the Court disregard the declarations and apply Rule 12(b)(6). If the Court converts any portion of this motion to a

6

Dismissal is appropriate under Rule 12(b)(6) if the plaintiff fails to state a claim upon which relief can be granted. "To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action,'" like those Cochran offers, are insufficient. *Id.* (*citing Twombly*, 550 U.S. at 555).

## V.    LEGAL ARGUMENT

### A.    The Claims Against The Non-Employer Defendants Should be Dismissed.

Cochran has sued five separate corporate entities while entirely failing to allege facts sufficient to establish that he was actually employed by any of them or that they should be treated as one entity.  In fact, HPE employed Cochran at the time of his termination, and neither HP Inc., ES, nor DXC TS – the Non-Employer Defendants – had any involvement in or control over that relationship. Because Cochran's allegations do not evince an employment relationship with any of the Non-Employer Defendants, or adequately demonstrate the interrelatedness to support a "single" or "joint" employer theory, his claims against them should be dismissed.

#### 1.    Cochran Lacks Standing to Pursue Claims Against The Non-Employer Defendants.

A plaintiff must demonstrate Article III standing to pursue a claim in federal court. *Laufer v. Looper*, 22 F.4th 871, 876 (10th  Cir. 2022). To establish standing, a plaintiff must allege facts sufficient to show:

> (1) [he] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely,

motion for summary judgment, Defendants respectfully request they be permitted to file a motion for summary judgment at a later date should the need arise.

as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. Inc.*, 528 U.S. 167, 180–81 (2000); *Laufer*, 22 F.4th at 876; *Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016) ("court can't 'assume'" plaintiff demonstrated Article III standing to proceed to the merits of the underlying claim). A court "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso*, 495 F.2d at 909.

Absent an employment relationship, Cochran cannot satisfy his burden to establish subject matter jurisdiction as to the Non-Employer Defendants pursuant to Rule 12(b)(1). *See Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008); *Cunningham v. BHP Petroleum Great Britain PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005) ("[O]nce a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue.") (citation omitted). Cochran lacks standing to sue the Non-Employer Defendants; the Court should dismiss the claims against them.

HPE employed Cochran at the time of his termination. *See Forsyth* Docket, ECF 384-1, Ex. B (WFR paperwork showing Cochran employed by HPE and not referencing any other Defendant). Neither ES, HP Inc., nor DXC TS employed him at that time. Therefore, Cochran lacks standing to assert his termination claims against these entities. *See, e.g.*, *Murphy v. Allstaff Med. Res., Inc.*, 2017 WL 2224530 (D. Colo. May 22, 2017) (the "existence of an employment relationship between or among the parties is a jurisdictional requirement under the FLSA."). Similarly, because these entities did not employ him at the time of termination, Cochran cannot assert claims based on their purported "failure to rehire him." *See TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

Cochran also lacks standing to pursue his ADEA claims against the Non-Employer Defendants. Only "employees" have standing to sue under the ADEA. *See* 29 U.S.C. § 623; *Oestman v. National Farmers Union Ins. Co.*, 958 F.2d 303 (10th Cir. 1992) (affirming ADEA

dismissal for lack of subject matter jurisdiction where plaintiff was not an employee). And he lacks standing to pursue CADA claims against the Non-Employer Defendants because Colorado law requires an employment relationship to confer standing under CADA. *See* C.R.S. § 24–34–402(1)(a); *Bank v. Allied Jewish Fed. Of Colo.*, 4 F. Supp. 3d 1238, 1241 (D. Colo. 2013).

CADA also constrains Cochran's Colorado common-law wrongful termination claim (premised on alleged age discrimination). Since CADA requires an employment relationship to confer standing, a common-law wrongful termination claim based on alleged age discrimination also requires an employment relationship. *See* TAC ¶ 95; *Ybarra v. Comprehensive Software Sys.*, No. 18-cv-01679-NYW, 2019 WL 266310, *8 (D. Colo. Jan. 18, 2019). As a result, Cochran's wrongful termination claim against the Non-Employer Defendants must be dismissed.

Finally, Cochran plainly lacks standing to pursue any claims related to an RA. Cochran alleges he received "sparse, deceptive, and incomplete" disclosures of "decisional units." TAC ¶ 44.  However, the Non-Employer Defendants did not employ him at the time of his termination and, in turn, did not provide any such disclosures to him. Thus, Cochran lacks standing because he cannot establish any causal link between an action by the Non-Employer Defendants and any alleged injury to him.

### 2. Cochran Cannot Establish That The Non-Employer Defendants Employed Him Or That The Defendants Are Joint Employers Or An Interrelated Enterprise.

Cochran lacks standing as a matter of black-letter law. In an effort to mask this obviously fatal defect, Cochran makes the conclusory legal allegations that all Defendants are "one interrelated enterprise," "the joint employers of each other," and "share common control, management, resources, employment policies, and a Workforce Reduction Plan [such] that they act as one single integrated enterprise and the alter egos of one another." TAC ¶¶ 6–7. Two federal courts already have rejected similar attempts to gloss over the distinctions between corporate

entities and the requirement of an actual employee/employer relationship to try and pursue multiple defendants. *See Forsyth*, 2020 WL 2524517 at *10-13; *Enoh*, 2018 WL 3377547, at *13. Cochran's maneuver should suffer the same fate.

The Non-Employer Defendants' evidence demonstrates that: (1) there is no common control between them and HPE with respect to management, employment policies, the selection of employees for workforce reduction, termination or re-hire, or any other aspect of labor relations; (2) HPE alone employed Cochran; and (3) the Non-Employer Defendants had no involvement in or control over Cochran's employment at the time of his termination. ECF 53-1, ¶¶ 4, 6–9; ECF 53-2, ¶¶ 4–5, 7–8; ECF 53-3, ¶¶ 5-8. Cochran's unsupported legal conclusions and artificial labels should not be credited. Instead, where a party challenges the facts on which subject matter jurisdiction depends, the court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1), without converting a motion to dismiss to one for summary judgment." *Martin v. United States*, No. 21-cv-02107, 2022 WL 2274706, at *1 (D. Colo. June 23, 2022) (citing *United States v. Rodriguez Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001). Cochran seeks to justify the inclusion of the Non-Employer Defendants by inaccurately characterizing HPE's WFR collectively as "Defendants' . . . WFR plans." TAC ¶¶ 78, 88. But the Non-Employer Defendants' declarations plainly and explicitly state each company is separate and independent, as are their WFR plans. *See* ECF 53-1, ¶¶ 4, 6–9; ECF 53-2 ¶¶ 4, 5, 7–8; ECF 53-3, ¶¶ 5–8.

If the Court declines to consider this issue of standing as properly raised under Rule 12(b)(1), it should still dismiss Cochran's claims against the Non-Employer Defendants pursuant to Rule 12(b)(6). First, Cochran's allegations are legal conclusions not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 679–81. Cochran alleges no facts to identify the specific entity that terminated him, or even any facts sufficient to support his claim that these "different entities" are

each his employer. TAC ¶ 6. Instead, in lieu of pleading actual facts, he resorts to artificially joining these defendants together by labeling them with the moniker "HP" in an attempt to cast his conclusory allegations as facts. *Id.* ¶ 1. A label is no substitute for actual facts.

 Next, this Court generally applies two separate tests to determine whether more than one entity may be considered a plaintiff's employer under the ADEA: the joint employer test and the single employer test. *Kazazian v. Vail Resorts, Inc.*, Civil Action No. 18-CV-00197-MEH, 2018 WL 2445832 (D. Colo. May 31, 2018) (plaintiff's joint employment allegations insufficient to state an ADEA claim) (citing *Bristol v. Bd. of Cty. Comm'rs of Cty. of Clear Creek*, 312 F.3d 1213, 1218 (10th Cir. 2002)). "Under both tests, the level of control the entities exercise is the guiding factor." *Kazazian*, 2018 WL 2445832 at *6.

Cochran's allegations are merely unsupported claims that: (1) after the purported "split", shareholders of HP Co. received shares of HPE and HP Inc. (TAC ¶ 8); (2) the headquarters of HP Inc. and HPE are located in the same city (¶ 9); (3) the chief executive officers of HPE and HP Inc. worked for HP Co. at the time of the "split" and communicated with each other (¶ 10); (4) the entities allegedly have the "right to control each others' employees" (¶ 11); (5) decisions were made in "tandem" (¶ 12); and (6) the entities knew about allegedly discriminatory practices (¶ 13).

Like the defective allegations in *Kazazian*, Cochran fails to plead any specific facts demonstrating that the Non-Employer Defendants exercised any control over his employment or termination. *Kazazian,* 2018 WL 2445832 at *6 (citation omitted). Indeed, Cochran has made **no** specific factual allegations related to DXC TS or ES in the TAC, independently justifying dismissal of those two entities even under a Rule 12(b)(6) analysis. Cochran fails to allege that employees of the Non-Employer Defendants fired him or played any other role in the termination of his employment. While Cochran lumps all of the Defendants together under the label "HP", this Court has, in fact, rejected the use of such conclusory labels without supporting facts. *Id.*

("Furthermore, merely referring to VRI collectively with TVC is insufficient to plausibly assert that both companies were Ms. Kazazian's employer.").

This Court and others have determined that general allegations, like those made here, that either "Defendants" or a single "Defendant" made decisions related to Cochran's employment are insufficient to survive a Rule 12(b)(6) motion to dismiss. *Id.*; *see also Forsyth*, 2020 WL 2524517, at *10-13; *Enoh*, 2018 WL 3377547, at *13; *Crumpley v. AWG Wholesale Grocers, Inc.*, 2016 WL 6610876 (D. Kan. Nov. 8, 2016); *Perez v. Wells Fargo & Co.*, No. C14-0989 PJH, 2015 WL 1887354 at *4-5 (N.D. Cal. Apr 24, 2015) (dismissing claims against five separate corporations, and finding that plaintiffs failed to "clearly allege[] an employment relationship between each named plaintiff and a particular defendant" and failed to "allege sufficient facts in the complaint to show that [each plaintiff's] injury is fairly traceable to a specific defendant's conduct").

Cochran's conclusory allegations about the supposedly common management of these "different entities," without supporting factual allegations that they each actually exercised control over his work, simply do not adequately plead an employment relationship. *See Park v. Fiserv Trust Co.*, Civil Action No. 10-cv-00189-PAB-CBS, 2010 WL 5093796 (D. Colo. Sep. 30, 2010) (dismissing three defendants where plaintiff alleged no facts that they exercised significant control over the same employees and referred to defendants in the complaint without differentiating between their conduct). Cochran's claims against the Non-Employer Defendants must be dismissed for lack of standing or for, alternatively, failure to state a claim.

### 3. Cochran Lacks Standing to Challenge Release Agreements.

Cochran never signed an RA (including its arbitration agreement), but alleges the RAs were "deceptive." TAC ¶ 44. Because Cochran did not sign a RA, he lacks standing to challenge such an agreement, and that claim must be dismissed. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016).

**B.      Cochran's Claims Should Be Dismissed Under Rule 12(b)(6).**

**1.      Cochran Fails to State An ADEA or CADA[3] Claim.**

In the Tenth Circuit, "an ADEA plaintiff may proceed by either of two general methods to carry the burden of making . . . his case." *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996). A "party may attempt to meet his burden directly, by presenting direct or circumstantial evidence that age was a determining factor in [an adverse employment action]. Or, more typically, a party may rely on the proof scheme for a *prima facie* case established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, . . . (1973)". *Greene*, 98 F.3d at 557.

Based upon how Cochran sets forth his individual ADEA claim, the *McDonnell Douglas* burden-shifting framework governs his claims. That framework involves a three-step analysis. *Greene*, 98 F.3d at 557. For discrimination claims based on termination (or other adverse action in his then-current position), Cochran must show he was "(1) within the protected age group; (2) doing satisfactory work (qualified for the position); (3) discharged (or adversely affected by defendant's employment decision); and (4) replaced by a younger person." *Hakeem v. Denver Pub. Sch.*, Civil Action No. 20-cv-00083-PAB-KLM, 2020 WL 4289422, at *9 (D. Colo. July 7, 2020) (citing *Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995)). To establish a *prima facie* case of age discrimination under a failure-to-hire theory regarding a different position, Cochran must show that: (1) he belongs to the protected class; (2) he applied for and was qualified for the job; (3) despite his qualifications he was rejected; and (4) HPE either ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination or continued to seek applicants who shared Cochran's qualifications. *Kahler v. Leggitt*, No. 18-cv-3162-WJM-KMT, 2019 WL 3928622, at *7-9 (D. Colo. Aug. 20, 2019).

---

[3] Colorado and federal law apply the same standards to discrimination claims, . . . they 'rise or fall' together." *Johnson v. Weld Cty.*, 594 F.3d 1202, 1219 n.11 (10th Cir. 2010) (citations omitted); *Brown v. Colorado Judicial Branch*, No. 19-cv-03362-MEH, 2020 WL 2848142, at *9 (D. Colo. June 2, 2020) (applying ADEA legal framework to CADA claim). Cochran's individual CADA claims fail for the same reasons as his individual ADEA claims.

While it is true that "'an employment discrimination plaintiff need not plead a *prima facie* case of discrimination' to survive a motion to dismiss," he must allege facts that make such a claim at least plausible[,] . . . . and [i]n assessing whether a plaintiff's claim is plausible, courts must 'examine the first step of the *McDonnell Douglas* framework: the elements [a plaintiff] would need to establish to prove a *prima-facie* case of . . . discrimination.'" *Kahler*, 2019 WL 3928622, at *7–9 (citing *Johnston v. Hunter Douglas Window Fashions, Inc.*, 715 F. App'x 827, 830 (10th Cir. 2017) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002)). Thus, to assess plausibility, the Court should analyze the *prima facie* elements. *See Morman v. Campbell Cty. Mem'l Hosp.*, 632 F. App'x 927, 933 (10th Cir. 2015) (analyzing the *prima facie* framework "is the <u>only</u> way to assess if claim[s] [are], in fact, plausible.") (emphasis added).

Cochran alleges he was within the protected age group and qualified for the position he performed. *See* TAC ¶¶ 18, 29. As to the third prong, however, not all of the conduct that Cochran challenges as unlawful is actionable. "To establish an adverse action under the ADEA, '[o]nly acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits will rise to the level of an adverse employment action.'" *Hyman v. New Mexico State Univ.*, No. CIV 18-1103 JB\K, 2020 WL 1514801, at *21 (D.N.M. Mar. 30, 2020) (citing *Robinson v. Cavalry Portfolio Servs., LLC*, 365 F. App'x. 104, 114 (10th Cir. 2010)).

Cochran alleges the following adverse employment actions: (1) his direct supervisor purportedly failed to "support" him in a "promotion to a Master Job Level," which never came to "fruition" [TAC ¶ 24]; (2) his direct supervisor purportedly "removed [him] from a project he had been working on after he had secured the laboratory for the project" [*Id.* ¶ 25]; (3) on "two occasions," he purportedly was "denied the opportunity" "to participate" in a TechFluence career advancement program [*Id.* ¶ 26]; (4) his employment was terminated effective November 1, 2019

[*Id.* ¶ 52]; and (5) he applied for more than 40 jobs with "HP" and its alleged "affiliates" between 2019 and 2020, but was either not selected for or did not hear back about the jobs [*Id.* ¶¶ 56–57]. Cochran's claims as to these alleged adverse employment actions should be dismissed.

> **2.    Cochran's Claims Regarding A Promotion, Removal From A Project, And Failure to Attend A Program Should Be Dismissed.**

Cochran's allegation that his direct supervisor purportedly failed to "support" him in a "promotion to a Master Job Level" which never came to "fruition" is insufficient to establish an unlawful adverse action. TAC ¶ 24. Nor is his allegation that he was removed from an unidentified project sufficient, or that he was denied the opportunity to participate in a TechFluence program. *Id.* ¶¶ 25–26. Cochran does not allege that these actions resulted in any change in tangible employment benefits, much less a significant one. And, as to the promotion, Cochran fails to allege that he actually applied, or was qualified, for it, which are requisite elements. *See Backus v. University of Colo.*, Civil Action No. 15-cv-01340-REB-NYW, 2015 WL 10490565, at *4 (D. Colo. Dec. 14, 2015). Claims based on these alleged adverse actions should be dismissed.

> **3.    Cochran Fails to State A Hiring Claim.**

> **a)    Cochran Failed to Exhaust His Hiring Claims.**

Cochran's hiring claims should also be dismissed against (1) the Non-Employer Defendants during either the Redeployment or Preferential Rehire Period and (2) all Defendants after the close of the Preferential Rehire Period because he has failed to exhaust his administrative remedies. In the TAC, Cochran alleges that, during a two-week "Redeployment Period" and a 60-day "Preferential Hiring Period," he unsuccessfully applied for certain positions at HPE. *See* TAC ¶ 56(a)–(jj). He also alleges that, after those two periods ended, he applied for seven positions with other alleged "HP affiliate[s]", including "Micro Focus" and "Prospecta", and five additional jobs positions with HP Inc. after January 2020. *Id.* ¶ 56(kk)-(qq). Cochran's charge of discrimination does not allege that he applied for jobs with: (1) *any* of the defendants (or non-defendants Micro

Focus or Prospecta) after the close of the Preferential Rehire Period or (2) any defendant other than HPE (or non-defendants Micro Focus or Prospecta) during the "Redeployment Period" or "Preferential Hiring Period" (let alone that he was rejected for any such jobs on the basis of his age). Thus, Cochran did not exhaust his administrative remedies regarding any purported hiring claims against any of the Non-Employer Defendants at any time, and, as such, he cannot pursue those claims in federal court.[4] Consequently, his ADEA and CADA hiring claims should be dismissed as to the Non-Employer Defendants, and dismissed against any defendant after the end of the Preferential Rehire Period.

> **b)      Cochran Has Failed To Plead A *Prima Facie* Case As To His Hiring And Re-Hiring Claims.**

Cochran's failure to hire or re-hire claims fail because he does not sufficiently plead the fourth prong of the *prima facie* case. He alleges that he applied for or expressed interest in "40 positions" on or after October 22, 2019 (in many instances, without specifying the specific entity):

- 8 with "HP" during the Redeployment Period (October 22, 2019 – November 1, 2019);
- 26 with "HP" during the Preferential Rehire Period (November 2, 2019 – January 1, 2020);
- 2 with "HP" after the Preferential Rehire Period (January 2, 2020 forward);
- 7 with "HP affiliates" "Micro Focus" and "Prospecta" after January 2020;
- 5 with HP Inc. after January 2020.

TAC ¶¶ 56–57.

Cochran does not allege that he applied for so-called "HP" jobs after the Redeployment and Preferential Rehire Periods. Instead, he claims he expressed interest in jobs by speaking with recruiters. *Id.* ¶¶ 56(ii)–(jj). Moreover, Cochran's conclusory allegation that he was "aptly qualified for each job position he applied for with Defendants" is not entitled to the presumption of truth. *Davis v. BAE Sys. Tech. Sols. & Servs., Inc.*, 764 F. App'x 741 (10th Cir. 2019)

---

[4] A plaintiff's failure to exhaust administrative remedies is treated as an affirmative defense. *See Cirocco v. McMahon*, 768 F. App'x 854, 857 (10th Cir. 2019). It may be raised in a motion to dismiss when the grounds for the defense appear on the face of the complaint. *Id.* at 858. Although courts normally consider only complaint allegations on a Rule 12(b)(6) motion, the Court may consider documents referred to in the complaint. *See, e.g.*, *Smallen v. The W. Union Co.*, 950 F.3d 1297, 1305 (10th Cir. 2020). Cochran's charge should thus be considered here.

("[Plaintiff's] allegation that his experience and skills matched the position perfectly is therefore conslusory and not entitled to the presumption of truth at the Rule 12(b)(6) stage.") (citing *Khalik*, 671 F.3d at 1191). Cochran does not allege younger individuals were hired for these jobs. *See id.*

Cochran's allegations fall far short of the standard required by *Twombly/Iqbal*, and his claims based on failure to redeploy, re-hire, or hire should be dismissed as a matter of law. *See, e.g.*, *Khalik*, 671 F.3d at 1192 ("[T]he *Twombly/Iqbal* standard recognizes a plaintiff should have at least some relevant information to make the claims plausible on their face"); *Kahler*, 2019 WL 3928622, at *7-9 (dismissing plaintiff's age claims under Rule 12(b)(6) and noting that "[a]lthough plaintiff alleges [the defendant] hired 'less experienced/less qualified' individuals, these assertions are conclusory and provide no basis for the court to ascertain [p]laintiff's own qualifications as compared to the referenced individuals. Moreover, [p]laintiff does not allege facts to show [the defendant] hired younger individuals for the specific positions for which she applied, or continued to seek applications from equally-qualified persons following [p]laintiff's rejections.").

### 4. Cochran Has Failed To Adequately Plead His Termination Claim.

Cochran likewise fails to allege a plausible *prima facie* case as to the fourth prong of his termination claim (*e.g.*, whether he was replaced by a younger person, treated less favorably than similarly-situated younger employees, or that Defendants intended to discriminate in deciding to terminate his employment), since he does not allege he was replaced by a younger employee. *See* TAC ¶ 53. Instead, he alleges only that he "was the oldest person in his work group," and that "[o]n information and belief, younger employees . . . were reassigned to other departments." *Id.*

Critically, however, Cochran does not allege whether the unidentified younger employees who "were reassigned" were similarly situated to him in terms of the jobs they performed, their qualifications, or the positions to which they were allegedly reassigned. It is not enough for Cochran to simply allege that unidentified younger employees were reassigned. Rather, he must

"assert facts to demonstrate that he was treated less favorably than other similarly-situated employees." *Hakeem*, 2020 WL 4289422, at *6 (D. Colo. July 7, 2020); *see also Kahler*, 2019 WL 3928622, at *7-9 (plaintiff could not rely on the conclusory allegation that "less experienced/less qualified" younger individuals were treated favorably).

Here, as pleaded, the unidentified younger employees who were allegedly reassigned could have been doing completely different (and dissimilar jobs), and might have been reassigned to completely different jobs than the one Cochran performed. Cochran's ADEA and CADA termination claims should thus be dismissed. *See Brown v. Flextronics Am.*, LLC, No. 11-cv-01117-LTB-KLM, 2013 WL 3216110, at *5 (D. Colo. Jun. 17, 2013) (requiring identification of other similarly-situated employees to adequately allege plaintiff was treated less favorably).

### 5.        Cochran's Disparate Impact Claim Fails.

Cochran's disparate impact age discrimination claims should be dismissed because he fails to identify any facially neutral employment policy in support of his individual disparate impact allegations. The TAC alleges the Defendants "used their WFR plans to disproportionately terminate age protected employees" and then "used their 'Redeployment' and 'Preferential Rehire Period' to disproportionately refuse to hire Defendants' age protected employees and former employees, including Plaintiff." TAC ¶¶ 78, 88, 98. This allegation, however, pleads *intentional* conduct, thereby improperly muddying Cochran's disparate impact claims with his disparate treatment claims. To support a disparate impact claim under the ADEA or CADA, Cochran must show "that a specific identifiable employment practice or policy caused a significant disparate impact on a protected group.'" *Apsley v. Boeing Co.*, 691 F.3d 1184, 1206 (10th Cir. 2012).[5] By contrast, disparate treatment is proved by showing a defendant treated a plaintiff "less favorably

---

[5] "CADA discrimination and retaliation claims are subject to the same legal standards as [federal] claims," thus the same analysis applies to Cochran's disparate impact claim under Colorado law. *Larson v. United Air Lines*, 482 F. App'x 344, 351 (10th Cir. 2012) (Title VII) (citing *Johnson*, 594 F.3d 1202 at 1219 n.11).

than others because of" his age. *See supra*. The two concepts are analytically distinct: "Disparate treatment is intentional discrimination, while disparate impact involves 'practices that are not intended to discriminate but in fact have a disproportionately adverse effect on'" an individual. *Morman,* 632 F. App'x 927 (citation omitted).

 In other words, Cochran's threadbare disparate *treatment* claim cannot also support his purported disparate impact claim. *See Schoenhals v. Dowling College*, No. 2:15-cv-2044 (ADS)(ARL), 2019 WL 1284259, at *5-7 (E.D.N.Y. Mar. 20, 2019) (factual allegations underlying claim of intentional discrimination cannot also serve as the basis for a plaintiff's disparate impact claim). In fact, the TAC does not include any allegations that identify a specific facially-*neutral* practice or policy that had a disparate impact on Cochran; rather, Cochran alleges only intentional conduct. Therefore, his disparate impact termination claim should be dismissed.

Additionally, to the extent that Cochran seeks to assert any hiring-related disparate impact claims, the ADEA does not permit applicants to assert such disparate impact claims. *See Kleber v. Carefusion, Corp.*, 914 F.3d 480 (7th Cir. 2019); *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958 (11th Cir. 2016); *Raymond v. Spirit Aerosystems Holdings, Inc*., 406 F. Supp. 3d 996 (D. Kan. 2019).  As a result, Cochran's disparate impact re-hiring or hiring claims should be dismissed.

### 6.     Cochran's Colorado Common Law Wrongful Termination Claim Is Not Cognizable And Must Be Dismissed.

While he does not explicitly identify the public policy forming the basis of his wrongful termination claim, Cochran's TAC implies that it is an alleged public policy against discriminatory adverse employment actions "on the basis of age." *See* TAC ¶¶ 94–101. But Cochran, as a matter of law, cannot sustain a wrongful discharge claim when a statutory remedy is available. The wrongful discharge doctrine in Colorado is an "exception to the at-will employment doctrine designed to provide a remedy for unlawful adverse employment actions where no cause of action would lie. Colorado courts have expressly disallowed its application where a statute provides a

wrongful discharge remedy." *Caspar v. Lucent Techs., Inc.*, 280 F. Supp. 2d 1246, 1249 (D. Colo. Sept. 2, 2003) (citing *Martin Marietta Corp. v. Lorenz*, 923 P.2d 100, 107, n.5 (Colo. 1992) (there would be no public policy exception to the at-will employment doctrine when a statute at issue provides a remedy). This Court has previously held that a "claim for wrongful discharge predicated on a public policy of non-discrimination is indistinguishable from a statutory CADA [and/or statutory federal] claim[s] of discrimination," and must therefore be dismissed. *Ybarra*, 2019 WL 266310, at *5; *Christen-Loper v. Bret's Elec., LLC*, 175 F. Supp. 3d 1213, 1219 (D. Colo. 2016).[6] Accordingly, Cochran's wrongful discharge claim should be dismissed.

## VI.   CONCLUSION

For the reasons set forth above, Defendants respectfully request that Cochran's: (1) claims against the Non-Employer Defendants be dismissed for lack of standing or, alternatively, for failure to state a claim upon which relief can be granted; (2) claims seeking to challenge the RA be dismissed for lack of standing; and (3) disparate treatment, disparate impact, and wrongful termination claims be dismissed for failure to state a claim as to all Defendants.

Dated this 8th day of July, 2022

s/ Jennifer S. Harpole
Jennifer S. Harpole
Lisa A. Schreter
Richard W. Black
LITTLER MENDELSON, PC
1900 Sixteenth Street, Suite 800
Denver, CO 80202
Tel: 303.629.6200
jharpole@littler.com
lschreter@littler.com
rblack@littler.com

*Attorneys for Defendants*

---

[6] Defendants acknowledge the split in this District as to whether wrongful discharge claims based on CADA (and corresponding federal statutes) are cognizable. *See Ybarra*, 2019 WL 266310, at *5 (discussing the split and finding such claims not cognizable). As discussed in *Christen-Loper* and *Ybarra*, the line of cases ruling against cognizability have reached the right result considering the "remedy-already-provided exception" under Colorado law. *See Christen-Loper*, 175 F. Supp. 3d at 1219 ("a wrongful discharge claim premised upon the CADA is not actionable.").

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 8th day of July, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Jeffrey L. Hogue
Tyler J. Belong
Jimmie Davis Parker
HOGUE & BELONG, APC
170 Laurel Street
San Diego, CA 92101
jhogue@hoguebelonglaw.com
tbelong@hoguebelonglaw.com
jparker@hoguebelonglaw.com
*Attorneys for Plaintiff*

*s/ Jennifer S. Harpole*
Jennifer S. Harpole