UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:20-cv-01235-RM-MEH

DANIEL COCHRAN,

    Plaintiff,

v.

HEWLETT-PACKARD COMPANY; HP ENTERPRISE SERVICES, LLC; HEWLETT-PACKARD ENTERPRISE CO.; HP Inc.; and DXC TECHNOLOGY SERVICES, LLC,

    Defendants.

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)**

---

## I. INTRODUCTION

Plaintiff Daniel Cochran was an age protected employee of an interrelated enterprise of companies, formerly known as the Hewlett Packard Company[1], and was terminated under a "Workforce Reduction Plan" ("WFR") that was utilized by each constituent company. The WFR, while facially neutral, had an unlawful disparate impact on age protected workers, like Mr. Cochran. As such, Plaintiff brings claims for age discrimination asserting causes of action under the federal Age Discrimination in Employment Act ("ADEA"), Colorado's Anti-Discrimination Act ("CADA"), and the common law against each of the affiliate companies under theories of direct employer, single-enterprise and/or joint-employer liability.

Defendants jointly respond by filing a Motion to Dismiss ostensibly under Rule[2] 12(b)(1) and (b)(6). Defendants argue Plaintiff was only directly employed and terminated by Defendant

---

[1] The interrelated enterprise of the descendants of the Hewlett Packard Company are Defendants HP Enterprise Services, LLC ("ES"), Hewlett Packard Enterprise Company ("HPE"), HP Inc. ("HPI."), and DXC Technology Services LLC ("DXC").

[2] All References to Rules are to the Federal Rules of Civil Procedure.

1

*HPE*. Then, adopting the conclusory moniker "Non-Employer Defendants" for all the HPE-affiliated entities, Defendants argue that they are "distinct legal entities" evidenced by several untested declarations, thus Plaintiff's claims as to the allegedly "Non-Employer Defendants" fail as a matter of law. Based on these extrinsic untested declarations Defendants further argue that Plaintiff's allegations do not establish a plausible basis for liability as to each Defendant.

Defendants are wrong, and their Motion is fatally flawed because (a) Defendants incorrectly contend the existence of an employment relationship under the ADEA is a jurisdictional issue to be considered under Rule 12(b)(1) – which would permit the Court to consider extrinsic evidence; and (b) Defendants' heavy reliance upon extrinsic evidence to dispute the *merits* of the inferences of the TAC requires the Court to consider the filing a Rule 56 Motion for Summary Judgment and thus must be denied as premature.

Lastly, even if it were somehow possible to excise the evidence and merits-based arguments from the Motion, the Motion would still fail under Rule 12(b)(6) standards because Plaintiff has plead a *plausible basis* for liability as to each defendant under the factually intensive joint-employer or single-enterprise doctrines. In the alternative, leave to amend would be warranted to allow any perceived defects of pleading to be remedied, allowing this long-delayed matter to proceed through discovery and trial.[3]

## II.     MATERIAL ALLEGATIONS

**Generally:** Plaintiff alleges he was first hired by Hewlett Packard Company in 1996. (TAC, ¶19.) Hewlett Packard Company underwent significant restructuring since he was hired. (*Id.*, ¶¶ 5-13.) The restructuring resulted in an interrelated enterprise of companies comprised of Defendants HP, Inc., Hewlett Packard Enterprise Co., HP Enterprise Services, LLC and DXC Technology Services, Inc. (*Id.*, ¶ 5.) Despite the various corporate maneuvers that occurred over

---

[3] To the extent the Court construes the filing as a proper Rule 12(b)(1) Motion, Plaintiff requests permission to conduct jurisdictional discovery and an evidentiary hearing to establish any disputed jurisdictional elements. See, *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324-25 (10th Cir. 2002).

the course of Plaintiff's employment, Defendants remained deeply interrelated including the utilization of identical WFRs. (*Id.*, ¶¶ 6-13.) Plaintiff was terminated pursuant to Defendants' WFRs at the age of 62, which had a discriminatory disparate impact on age protected employees, including himself. (*Id.*, ¶¶ 1, 3, 29, 52, 76-78.)

**The Interrelated Descendants of the Hewlett Packard Company:** In 2015, Hewlett-Packard Company became two entities – Hewlett-Packard Enterprise Co. ("HPE") and HP, Inc. ("HPI"). (*Id.*, ¶ 8.) As a result of the split, every shareholder who owned a share of Hewlett-Packard Company was assigned one share of HPE and one share of HPI, and retained ultimate control of all significant decisions and equal financial control. (*Id.*) HPI and HPE's corporate headquarters and nerve centers are located in Palo Alto, California where both entities manage, direct, coordinate and control their business operations. (*Id.*, ¶ 9.) Chief executive officers of HPE and HPI worked for Hewlett-Packard Company at the time of the split, and they closely communicated with one another about employees and business operations. (*Id.*, ¶10.) HPE further evolved to HP Enterprise Services, LLC and DXC Technologies. (*Id.*, ¶ 5.)

Further, the policies and practices that governed the rights of the employees were the same for all of the Defendants. (*Id.*, ¶11.) The WFR and the Preferential Rehire Period policy utilized by Hewlett Packard Company were adopted and used by both HPE (and by extension HPS and DXC) and HPI. (*Id.*, ¶12.) Both entities knew about, promoted, perpetuated, and helped facilitate one another's age discrimination scheme under the WFR. (*Id.*, ¶13.)

**Summary of the WFR:** Defendants have a systematic policy and practice of terminating employees 40 years of age or older through the WFR. (*Id.*, ¶78.) Defendants utilized the same WFR since 2012, and an iteration continues to be employed to this day. (*Id.*, ¶33.) High level executives made statements evidencing the intent of the facially neutral WFR was to actively replace older employees with younger ones. (*Id.*, ¶¶ 35-37, 48.) Although purportedly neutral in its application, the WFR targets (and continues to target) older, age-protected workers in disproportionate numbers. (*Id.*) The WFR does not take into account performance reviews or evaluations, so the employee selected for the WFR Plan is *not* based on merit, and has the overwhelming effect of terminating

older employees at vastly higher rates than younger employees. (*Id*.)  For example, in 2015 an astounding eighty-five percent (85%) of all employees Defendant terminated under its WFR in a single State were age forty or older. (*Id.,* ¶ 42.)  In October 2019, Defendants were still consistently eliminating the jobs of older, age protected employees, like Mr. Cochran, and actively replacing them with younger employees. *Id.*, ¶46.

Theoretically, Defendants' employees terminated under the WFR Plan were and are "encouraged" to apply for other jobs for a limited amount of time. (*Id.,* ¶ 50.)  Specifically, HP has a two-week "Redeployment Period" and a 60-day "Preferential Rehire Period." (*Id.*)

During the two-week Redeployment Period, if an employee was able to find a job at HP, s/he would be allowed to continue work without interruption. (*Id.,* ¶ 51.)  If an employee was *unable* to find another job within his two-week Redeployment Period, then the  employee enters the 60 day "Preferential Rehire Period." (*Id.*)  If an employee was hired during the Preferential Rehire Period, then s/he would be rehired without having to undertake the approval process normally required for a rehire. (*Id.*)

**Mr. Cochran's Employment with HP:**  Mr. Cochran worked for Defendants in the capacity of an independent contractor and an employee since 1992. (*Id.,* ¶¶ 19-22.)  Throughout his employment with Defendants, Mr. Cochran performed his duties in a satisfactory and competent manner, and he was promoted because he was excelling in his position. (*Id.,* at ¶¶ 22, 29.) Defendants promised Mr. Cochran future promotions. (*Id.*)

Mr. Cochran never received the promotion he was promised. (*Id.*, ¶ 24.)  Instead, Defendants assigned Mr. Cochran to a new manager who began to discriminate against him because of his age in November 2017. (*Id.,* ¶¶ 23-24.)  Moreover, Defendants repeatedly discriminated against Mr. Cochran by denying him career advancement opportunities that were granted to younger employees (*Id.*, ¶ 26.)  Mr. Cochran was denied the opportunities for future advancement because of his age whereas younger employees were not.(*Id.*)

On or about October 22, 2019, Mr. Cochran was notified by his manager that his employment was being selected for termination under the WFR, and that his termination date would

be November 1, 2019. (*Id.,* ¶ 52.)  At the time of his selection, Mr. Cochran was the oldest person in his work group. (*Id.,* ¶53.)  The second oldest employee in his team was also selected and ultimately terminated pursuant to the WFR. (*Id.*)  Younger employees who worked in Mr. Cochran's team are believed to have been reassigned to other departments within HP. (*Id.*)  Mr. Cochran applied for 40 jobs at HP, including 33 during the Redeployment and Preferential Rehire Period, and additionally has applied for four jobs with HPI, but has been rejected each and every time.(*Id.*)

### III. LEGAL STANDARD

**A. The Issue of Whether an Employment Relationship Exists Under the ADEA is Not Jurisdictional and Must be Analyzed under Rule 12(b)(6), Not Rule 12(b)(1).**

*1. Rule 12(b)(1) and Rule 12(b)(6) Standards.*

Dismissal pursuant to Rule 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the complaint. Fed. R. Civ. P. 12(b)(1).  Under Rule 12(b)(1), a party may look beyond the allegations in the complaint and challenge the facts upon which subject matter jurisdiction is based. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  In such instances, a court has wide discretion to allow affidavits and other documents *without* converting the motion to dismiss into a motion for summary judgment. *Id.*  But, for the reasons discussed *infra*, this standard is inapplicable to the instant motion.

Under Rule 12(b)(6), "[d]ismissal is appropriate only if the complaint, *viewed in the light most favorable to plaintiff*, lacks enough facts to state a claim to relief that is *plausible on its face*." *United States ex rel. Conner v. Salina Regional Health Center,* 543 F.3d 1211, 1217 (10th Cir. 2008) (emphasis added).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw *the reasonable inference* that the defendant is liable for the misconduct alleged." *Burnett v. Mortg. Elec. Registration Sys., Inc.,* 706 F.3d 1231, 1235 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a *sheer possibility* that a defendant has acted unlawfully." *Iqbal*, *supra*, at 678 (emphasis added).  Lastly, when evaluating a motion to dismiss

pursuant to Rule 12(b)(6), the district court should consider "the totality of the pleadings" to determine if the plaintiff has stated an actionable claim. *See, City of Philadelphia v. Fleming Cos., Inc*., 264 F.3d 1245, 1261-62 (10th Cir. 2001); *see also, Adams v. Kinder-Morgan, Inc.* (10th Cir. 2003) 340 F.3d 1083, 1092.

> 2. <u>Contrary to Defendants' Representation,  Inquiry as to the Existence of an Employment Relationship under the ADEA Must be Determined on a Rule 12(b)(6) or Rule 56 Basis.</u>

Rather than honoring the *Iqbal* standard that the allegations in the complaint must be taken as true, *all reasonable inferences* must be drawn in Plaintiff's favor, and Plaintiff need only establish a *sheer possibility* of liability on the totality of the allegations, Defendants' Motion instead presents substantial (and disputed) evidence to focus on the *merits* of the factually intensive, single-enterprise or joint-employer theories of liability advanced by Plaintiff.

Ignoring previously-cited[4] mandatory authority, Defendants invite the Court to consider their evidence because of "Defendants' good faith belief that their standing argument is properly raised under Rule 12(b)(1)." (Motion, p. 6, fn. 2.)  Further demonstrating the spuriousness of their position to introduce untested evidence at this stage, Defendants state, "[i]f the Court converts any portion of this motion to a motion for summary judgement, Defendants respectfully request they be permitted to file a motion for summary judgment at a later date..," citing no legal authority for the proposition. (*Id.*)  Defendants stratagem is inappropriate,  and is nonetheless prejudicial to Plaintiff, who has not been permitted an opportunity to conduct discovery to test Defendants' improperly proffered evidence nor affirmatively establish the elements necessary for single-enterprise or joint-employer theories of liability. (See, Plaintiff's Opposition to Concurrently Filed Motion for Stay.)

Defendants' tactic requires this Court to ignore precedent, namely, *Wheeler v. Hurdman,* 825 F.2d 257 (10th Cir. 1987), and to consider untested evidence suggesting that the determination of an employment relationship under the ADEA rises to a jurisdictional question ripe for adjudication upon extrinsic evidence at the pleading stage. (Motion, p. 5, fn. 1.)  Contrary to Defendants' assertions, the issue is *not* one of first impression in this District.  Instead, the law in the 10th Circuit

---

[4] See ECF 59 [Response to Defendants Motion to Dismiss/Motion to Strike], pp. 6-7.

is settled – the determination of the existence of employment relationship under the ADEA is a "mixed" element of jurisdiction and merits – thus, limiting challenge on it to Rule 12(b)(6) or Rule 56 jurisprudence.

In *Wheeler*, a partner in an accounting firm brought claims for, *inter alia*, age discrimination under the ADEA. *Wheeler v. Hurdman*, 825 F.2d 257, 258. The defendant accounting firm filed a Motion to Dismiss under Rule 12(b) submitting evidence disputing the existence of an employment relationship. The *Wheeler* Court held, "we find that the determination of whether Wheeler qualifies as an employee under the federal discrimination statutes is both a jurisdictional question and an aspect of the substantive claim in her discrimination action….[and]if the jurisdictional question is intertwined with the merits of the case, the issue should be resolved under 12(b)(6) or Rule 56." *Id.* at 259. Thus, "it was appropriate for the court to… convert the [12(b)(6) motion] to a Rule 56 motion when extraneous evidence was submitted." *Id.*, 260.

The same fate should lie here. Defendants' motion provides a pretense that the issues before the Court are jurisdictional allowing the introduction of disputed evidence at this stage, and misleadingly assert the issue is one of first impression. It is not. The Defendants' invitation to ignore binding authority provides them a fig leaf from which to unfairly launch an evidenced-based assault on Plaintiff's theory of the case using untested and disputed evidence prior to any opportunity to conduct the discovery necessary to establish the factually intensive inquiry as to joint-employer, or single-enterprise liability. Defendants' heavy reliance on extrinsic evidence, however, is not without remedy as described below.[5]

**B. Defendants' Reliance on Extrinsic Evidence Converts the Instant Motion to a Rule 56 Motion for Summary Judgment, which Must be Denied as Premature.**

As demonstrated by *Wheeler*, the law is unambiguous: when a party submits evidence with their Rule 12(b)(6) motion, it must be disregarded or treated as a Rule 56 Motion for Summary Judgment. In this case, the evidence submitted is so heavily relied upon throughout Defendants'

---

[5] See Motion, pp. 1-3, 7-10.

Motion, and was proffered in knowing violation of the applicable standard, that Defendants could not have reasonably expected the Court to "unring the bell" and simply disregard the evidence. In this situation, the burden to disregard the evidence should not be borne by the Court and Plaintiff, but instead the violating party – the Defendants – by denying their motion until Plaintiff has had an opportunity to test the veracity of their declarations, their supporting evidence, and their conclusions. Defendants could have proceeded purely on 12(b)(6) grounds *without* the submission of extrinsic evidence, but they knowingly elected not to.

FRCP Rule 12(d) reads:

> "Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

Here, Defendants refer to several declarations and other extrinsic evidence to argue the merits of their position. As one example, Defendants submit that Cochran's WFR paperwork only references HPE (Motion, p. 8) and that "the Non-Employer Defendants' declarations plainly and explicitly state each company is separate and independent, as are their WFR plans. See ECF 53-1, ¶¶ 4, 6–9; ECF 53-2 ¶¶ 4, 5, 7–8; ECF 53-3, ¶¶ 5–8." (Motion, p. 10.) Notwithstanding the improbable coincidence that all these entities admittedly employ a WFR, Plaintiff should be entitled to test Defendants' assertions before the Court weighs them to issue a dispositive ruling in the case.

Defendants' motion is plainly a Rule 56 motion, which must be denied until Plaintiff has had an opportunity to conduct discovery. *See, Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 n.5 (1986) (holding that "summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition"); *see Reyes v. Colo. Div. of Reclamation Mining & Safety*, 2019 U.S. Dist. LEXIS 129127 at *12 (D.Colo. Jul. 29, 2019) (Rule 56(d) provides an opportunity to take discovery before the summary judgment motion is considered); *see also, Price v. Western Resources, Inc*. 232 F.3d 779, 783 (10th Cir. 2000) ("[T]he movant's exclusive control of such information is a factor weighing heavily in favor of relief under

Rule 56(f)"). Although none of Defendants' conclusions would necessarily impair a finding of liability as to the "Non-Employer Defendants," Plaintiff has not even been permitted to test the evidence submitted by Defendant yet. Plaintiff must be given that opportunity.

## IV.   ARGUMENT

### A. Defendants' Argument is Rife with Disputed Factual Contentions and Citations to Evidence Which Plaintiff Cannot be Expected to Rebut until Discovery has Been Permitted.

Defendants proffered 12(b)(6) arguments are mostly factual contentions better suited for summary judgment. For the reasons discussed, Plaintiff is under no obligation to rebut these improper factual contentions and their corresponding extrinsic evidence. As such, the remaining opposition will focus on the standard articulated by *Iqbal*; that is, the *allegations in the Complaint* control, they are accepted as true, and all reasonable inferences viewed in the light most favorable to the Plaintiff are to be made when looking at the totality of the pleadings. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also, City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1261-62 (10th Cir. 2001); *Adams v. Kinder-Morgan, Inc*. (10th Cir. 2003) 340 F.3d 1083, 1092. For the reasons herein and under the standard that Plaintiff must satisfy at this early stage, Defendants' Motion should be denied.

### B. Plaintiff Has Standing as to the Claims Asserted Against the "Non-Employer" Defendants.

Defendants contend Plaintiff lacks standing for his claims against Defendants because Plaintiff fails to *establish* an employment relationship. (Motion, pp. 7-8.) The only element of standing at issue under Defendants' cited authority (*Friends of the Earth, Inc. v. Laidlaw Env't Servs. Inc.*, 528 U.S. 167, 180–81 (2000)) is whether Plaintiff's injury is "fairly traceable" to the challenged actions of the defendant. In this case, Plaintiff alleges that he was terminated pursuant to a WFR that had a disparate impact on age protected workers in use by all Defendants and that the companies were deeply interrelated, acting as a single-enterprise for the reasons cited in Section II. Defendants disagree, and cite to extrinsic evidence.

9

They argue:

> "HPE employed Cochran at the time of his termination. See Forsyth Docket, ECF 384-1, Ex. B (WFR paperwork showing Cochran employed by HPE and not referencing any other Defendant). Neither ES, HP Inc., nor DXC TS employed him at that time. Therefore, Cochran lacks standing to assert his termination claims against these entities. Similarly, because these entities did not employ him at the time of termination, Cochran cannot assert claims based on their purported "failure to rehire him. Cochran also lacks standing to pursue his ADEA claims against the Non-Employer Defendants. Only "employees" have standing to sue under the ADEA."[6]

(Motion, p. 8) [internal citations omitted.]

Defendants' improper evidence is unpersuasive. Nonetheless, at this stage of the case, all that is required is that all favorable inferences of the allegations in the Complaint result in a *sheer possibility* that an employment relationship formed between Plaintiff and the "Non-Employer Defendants." For the reasons discussed below, Plaintiff has pleaded sufficient facts to plausibly establish Defendants' liability under a single-enterprise theory, or in the alternative, a joint-employer theory. Defendants' evidence-based argument to the contrary are premature and should be disregarded until Plaintiff has had an opportunity to conduct discovery into them. As such, Defendants' argument should be raised to the trier of fact at trial, or on summary judgment motion once adequate discovery has been conducted.

   1. *Plaintiff Has Article III Standing to Pursue the "Non-Employer" Entities (HP) Because They Acted as One Integrated Enterprise.*

ADEA: In order to determine the "Non-Employer Defendants'" status as an employer of the Plaintiff under a single enterprise theory in employment discrimination cases, the Court looks to four factors: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *Bristol v. Board of County*

---

[6] Defendants also claim Plaintiff lacks standing for any claims related to the Release Agreement. But, Plaintiff here is not bringing any separate claims against Defendants' severance agreements other than to support his age discrimination claims. Further, while Defendants argue Plaintiff lacks standing for any claims related to the Release Agreement because Defendants were non-employers, Plaintiff's complaint sufficiently alleges that Defendants remain liable for the reasons further discussed below.

*Comm'rs,* 312 F.3d 1213, 1218 (10th Cir. 2002).  Although the presence or absence of any one factor is not controlling, in light of the ADEA's goal of remedying and eliminating age discrimination in the workplace, "[c]ourts generally consider the third factor--centralized control of labor relations--to be the most important. *See, e.g., Romano*, 233 F.3d at 666 ('There is near unanimity that control of labor operations i.e., control of employment decisions, is the most important of the four factors.'); *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir. 1999).

      **i.** Interrelation of Operations.  The HP Entities (Non-Employer Defendants) share the same corporate headquarters. (TAC, ¶ 9.)  The same high-level employees worked at HP Co. before the split and now work at both HPE and HPI, and also now closely communicate with each other about employees and business operations. (TAC ¶ 10) *see Color Sys., Inc. v. Meteor Photo*, 1987 WL 11085 at *5 (transfer of personnel between parent and subsidiary is factor for consideration).

      **ii.** Centralized Control of Labor Relations.  The HP Entities used the same WFR, and coordinated efforts to implement it. (TAC at ¶¶ 7, 33-34.)  The WFR disproportionately terminates older workers. *See, Hopper v. Re/Max Props.*, 2017 U.S.Dist.LEXIS 27852, at *9-10 (D.Colo. Feb. 28, 2017) ("Most important to control over the terms and conditions of an employment relationship is the right to terminate it under certain circumstances." (quoting *Knitter v. Corvias Military Living*, 758 F.3d 1214 (10th Cir. 2014), which addressed "employer" for purpose of Title VII.); *Crumpley v. Associated Wholesale*, 2018 U.S.Dist.LEXIS 68521, at *90 (D.Kan. Apr. 23, 2018) ("The right to terminate an employment relationship is the most important factor demonstrating control over the terms and conditions of the employment." (citing, *Bristol v. Bd. of Cty. Comm'rs*, 312 F.3d 1213, 1221 (10th Cir. 2002).) (TAC, ¶¶ 41-42.)  The HP Entities hiring and firing decisions were made in tandem, and they all used the same Preferential Rehire Period policy. (TAC, ¶ 12.)  Further, the HP Entities share other common employment policies to control employees. (TAC, ¶¶ 7, 11.)

      **iii.** Common Management.  The CEOs of both HPI and HPE worked for HP Co. before it broke off into two separate corporations, and after the split they both communicated closely with

one another to implement the WFR. (TAC ¶ 10.)  Further, the HP Entities share common management. (TAC at ¶ 7.)

      **iv.** Common Ownership and Financial Control.  After the split, every shareholder had an equal amount of shares of the HP Entities and retained ultimate control of all significant decisions and equal financial control. (TAC at ¶ 8.)

Defendants essentially argue that Plaintiff lacks standing because their *evidence* establishes that the respective Defendants acted separately.  Specifically, they cite to three declarations and other extrinsic evidence in an attempt to distinguish each entity as sufficiently separate to avoid single enterprise liability.

Colorado Anti-Discrimination Act (CADA):  Defendants claim that Mr. Cochran lacks standing to pursue his CADA claim, citing C.R.S. § 24-34-402(1)(a) and *Bank v. Allied Jewish Fed. Of Colorado*, 4 F. Supp.3d 1238, 1241. (Motion at p. 9.)  These cases are not helpful to HP's argument.  In fact, the court in *Bank* noted that CADA does not define the terms "employ" or "employing" and there was no case law that interprets those terms. *Id.* at 1241.  Ultimately, the *Bank* court found the meaning of employee under CADA did not include individual *supervisors*. *Id.*  In any event, the integrated enterprise doctrine (or single employer test) is available as a theory of liability under the CADA. *See, LaFont v. Colo. Ath. Club, Civil Action*, 2015 U.S. Dist. LEXIS 113136, at *7-9 (D. Colo. Aug. 26, 2015) (analyzing the integrated enterprise doctrine where Plaintiff alleged both Title VII and CADA claims.)  In sum, under both the ADEA and the CADA, Plaintiff alleges sufficient facts to establish a sheer possibility that the Defendants operate as one integrated employer.

    2. *Plaintiff Pleads a Plausible Case Against the "Non-Employer Defendants" under the Joint-Employer Doctrine.*

Plaintiff has pled sufficient facts to support the non-employers' liability under a joint employer theory.  The Tenth Circuit acknowledges that under the joint-employer doctrine, "two entities are separate" but "co-determines the essential terms and conditions of employment." *Bristol, supra* at 1218; see *Virgo v. Riviera Beach Assocs., Ltd.,* 30 F.3d 1350, 1359-61 (11th

Cir. 1994). Under the joint-employer doctrine, courts analyze whether the entities "'exercise significant control over the same employees.'" *Id.* (quoting *Graves v. Lowery*, 117 F.3d 723, 727-728 (3d Cir. 1997).

Here, Plaintiff alleges Defendants are not only formerly a singular company in all aspects but continued a special relationship with uniformity and control over each entity's employees evidenced by common employment practices, including the utilization of identical WFRs. And due to Defendants' use and implementation of the WFR, Mr. Cochran was unlawfully terminated based on his age. Nevertheless, despite Defendants claim that Plaintiff lacks sufficient specific facts to support his joint-employer theory, discovery is likely to develop the record to determine if these clearly related entities were so interrelated as to expose them to joint employer liability. Defendants' assertion that Plaintiff's claims are unsupported, or controverted by evidence, tortures the legal standard for a motion to dismiss. At this stage of the proceedings, Plaintiff is not required to plead (or know) every detail necessary to establish his claims and prove with sufficient evidence each of the allegations in his operative complaint. Rather, the Court shall accept Plaintiff's allegations in the complaint as true and construe them in the light most favorable to him.

Furthermore, Defendants reliance on the non-binding *Forsyth* and *Enoh* decisions regarding those plaintiffs' failure to establish liability in an attempt to peer pressure this Court to rule the same way is misplaced because the allegations differ in important ways. In *Forsyth*, plaintiffs apparently pled that HPI and HPE "were interrelated because they *separately* used the same WFR processes." (emphasis original.) *Forsyth et al. v. HP Inc., et al.* 2020 U.S. Dist. LEXIS 87145 at 35-36 (N.D. Cal. 2016). Here, Mr. Cochran alleges that Defendants worked *together* to coordinate the efforts to implement the WFR onto employees. (TAC, ¶ 34.) This factor is important in terms of the intrarelationship Defendants had in implementing its policies. Similarly, Defendants' reliance on *Enoh* is likewise misplaced. *Enoh v. Hewlett Packard Enterprise Company*, 2018 U.S. Dist. LEXIS 115688 at *38-39. In *Enoh*, the district court

dismissed the action for being filed in an improper venue. The issue of the sufficiency of the allegations with respect to single enterprise or joint enterprise liability was not analyzed outside a mere recitation of allegations necessary to establish standing as "identifying the entity responsible for challenged employment decisions." *Id.*

Lastly, Defendants' reliance on *Kazazian v. Vail Resorts, Inc.* is misplaced as well, given the facts specific to that case. In *Kazazian*, while the Court affirmed that the plaintiff failed to sufficiently plead her discrimination claims against co-defendant Vail Resorts, Inc. ("VRI"), the plaintiff's allegations against VIR were much more conclusory and general than Mr. Cochran's allegations against the Defendants herewith. As the *Kazazian* Court noted, the plaintiff there merely alleged VRI's liability by collectively naming it as "Defendants" and not once mentioned VRI in her operative complaint other than introducing VRI for "jurisdictional purposes." *Kazazian v. Vail Resorts, Inc.*, 2018 U.S. Dist. LEXIS 92687 at *17-18 (D. Colo. May 31, 2018). In contrast, as mentioned above, Mr. Cochran has sufficiently pled Defendants are liable given their interrelations and common control and management, especially in implementing the WFR, which consequently lead to Mr. Cochran's discriminatory termination.

### C. Plaintiff Generally States a Claim under the ADEA and CADA under the Liberal Rule 12(b)(6) Pleading Standards

Defendants concede that Plaintiff is not required to plead a *prima facie* case for discrimination in his complaint. (Motion, p. 14); *Valencia v. GEO Grp., Inc.,* 2005 U.S. Dist. LEXIS 36122, at *8 (D. Colo. Dec. 13, 2005) citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) ["The Supreme Court has ruled that "an employment discrimination plaintiff need not plead a *prima facie* case of discrimination."] The *prima facie* case of employment discrimination is an evidentiary standard, not a pleading requirement. *Valencia,* at 510. Plaintiff need only plead that (a) he is a member of the protected class, (b) was qualified for the job, (c) suffered an adverse employment action, and the circumstances give rise to an inference of discrimination. *Dunham v. Neat Capital, Inc.,* 2018 U.S. Dist. LEXIS 181677, at *7 (D. Colo.

Oct. 22, 2018) (citing *Colo. Civil Rights Comm'n v. Big O Tires, Inc.,* 940 P.2d 397, 400 (Colo. 1997)).

Here, Plaintiff alleged that he is over the age of 40 (TAC, ¶ 2); qualified (excelling) for the position (*Id.*, ¶¶ 20-22); was not promoted (*Id.*, ¶ 24), was terminated (*Id.*, ¶¶ 2, 29, 52), and was not rehired on the basis of his age (*Id.*, ¶¶ 56-62). Plaintiff further alleged certain policies and practices of Defendants led to and resulted in age discrimination; and the resulting disproportionate hiring and firing numbers concerning age-protected versus non-age-protected employees further evidences the discrimination. (*Id.*, ¶¶ 23-70.) Accordingly, Plaintiff has sufficiently pleaded an ADEA and CADA claim.

### 1. *Defendants' Piecemeal attack on Plaintiff's ADEA and CADA Claims Are Not Supported by Law*

Defendants ignore the required analytical framework for "adverse employment actions" under the ADEA and CADA[7]. Rather than analyze Plaintiff's allegations *in context* and *liberally* and *broadly* construe those allegations of adverse actions, Defendants improperly treat each individual fact as a stand-alone cause of action. They start by artificially splintering the single cause of action into three subparts: a promotion discrimination claim, a hiring discrimination claim, and a termination discrimination claim. (Motion, p 13-17.) Then, only after segregating these allegations, do Defendants proceed to narrowly examine each factual allegation in isolation and unhinged from context, in order to argue each allegation on its own is not sufficient to establish an "adverse employment action." (See, *Id*.) This approach is inconsistent with Tenth Circuit precedent. *See, Anderson, supra; see also, Barone v. United Airlines, Inc.,* 355 F. App'x 169, 181-82 (10th Cir. 2009). For this reason alone, Defendants' Motion seeking to dismiss individual allegations of "adverse employment action" is without merit.

In their piecemeal attack, Defendants contend Plaintiff's allegations regarding adverse employment actions – when viewed in isolation of each other – do not constitute "a change in

---

[7] As noted by Defendants, the ADEA and CADA claims rise and fall together (Motion, p. 13, fn. 3)

15

respect to Plaintiff's terms of employment;" thus, were not "adverse employment actions." Defendants are wrong. Foremost, the standard is not limited to only instances where *terms* of employment are altered; rather the standard is whether there has been any change to "compensation, terms, conditions, *or* privileges of employment." 42 U.S.C. § 2000e-2(a)(1); 29 U.S.C. § 623; *See, Barone v. United Airlines, Inc.,* 355 F. App'x 169, 181-82 (10th Cir. 2009).

Furthermore, for the reasons stated above, the Court must not view each allegation in its own isolation chamber, but rather the Court must view the allegations *liberally*, in *context and in conjunction* with the other allegations including making favorable *inferences*. *See, Anderson, supra*; *see, Barone, supra*. Here, the alleged facts include the following: while Plaintiff was 60 years old and the oldest person on his team, Defendants (i) expressly denied Plaintiff the promotion he had previously been promised; (ii) removed Plaintiff from a desirable project without any legitimate business reason and replaced him with a much younger employee; and (iii) *repeatedly* denied Plaintiff career advancement opportunities (such as the TechFluence Program opportunity) that were offered instead to much younger employees, and finally (iv) terminated Plaintiff pursuant to a facially neutral but discriminatory WFR. (TAC, ¶¶ 24-26.) Further, Defendants took these actions all during the time period when the following comments directed to age-protected employees were commonplace at HP: "when are you planning on retiring," "You must be getting ready to retire" and their CEO was intimating they needed to get a younger workforce. Clearly, these acts – especially in context and with inferences made – constituted a sufficient "change in respect to Plaintiff's compensation, terms, conditions, *or* privileges of employment."

### 2. *Plaintiff's Hiring, Promotion and Wrongful Termination Allegations are Sufficient to State a Claim under the ADEA and CADA.*

Despite Defendants piecemeal attack, the allegations that (a) the failure to promote Mr. Cochran, (b) the failure to hire or rehire Mr. Cochran, and (c) the termination of Mr. Cochran under the WFR were unlawfully on the basis of age present a plausible theory of liability under the ADEA

in that each separately (and especially collectively) constitute an adverse employment action. As for the failure to promote, Defendants argue that Plaintiff never alleges he was qualified for the job. This is contrary to any reasonable inference upon the totality of his allegations, notwithstanding that he alleges that he was promised the promotion. Defendants argue the same with respect to the rehiring and hiring allegations. (Motion, pp. 16-17.) This likewise is contrary to the allegations in the Complaint.

With respect to Plaintiff's termination under the WFR, Plaintiff must allege that he was: "(1) within the protected age group; (2) doing satisfactory work (qualified for the position); (3) discharged (or adversely affected by defendant's employment decision); and (4) replaced by a younger person." *Hakeem v. Denver Pub. Sch.,* 2020 U.S.Dist.LEXIS 133184, at *23 (D.Colo. July 7, 2020) (citing *Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995). But, "because a plaintiff is not always replaced with another employee, . . . a plaintiff may ***demonstrate the fourth [prong] by producing 'evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue***'" by showing (1) he was replaced by a younger person, (2) he was treated less favorably than younger employees, *or* (3) that defendant intended to discriminate in reaching the decision to terminate him. *Id.* at * 23-25.

Defendants' sole argument for dismissing Mr. Cochran's termination claim is that "he does not allege he was replaced by a younger employee." (Motion, p. 17.) Although in proving the fourth prong an employee *may* allege, he was replaced by a younger employee, the employee is **not required** to make this allegation. Rather, an employee may also allege that he was treated less favorably than younger employees **or** that employer intended to discriminate in reaching the termination decision. Throughout the TAC, Cochran alleged **both** that he was treated less favorably than younger employer *and* that HP discriminated against him because of his age via the WFR.

D.     **Plaintiff's Disparate Impact Claim is Properly Pled.**

To establish a prima facie case of disparate impact discrimination under the ADEA, "plaintiffs must show that a specific identifiable employment practice or policy caused a significant disparate impact on a protected group." *Frappied v. Affinity Gaming*, 966 F.3d 1038, 1054 (10th

17

Cir. 2020). "[A]n employee must point to both a significant disparate impact and to a particular policy or practice that caused the disparity." *Id.*

Contrary to Defendants' contention, the TAC alleges specific discriminatory practices and policies at issue. First, Mr. Cochran alleged Defendants have a practice of terminating employees over the age of 40 through the WFR (TAC, ¶¶46-49) and the practice resulted in the disproportionate termination of employees over the age 40 years. (*Id.,* ¶ 42.) Mr. Cochran also pled statements by Defendants' executive employees showing the animus toward employees over the age of 40 years old and the desire to have a younger workforce. (*Id.*, ¶¶ 35-37.)

Second, Mr. Cochran has alleged HP has a practice of not rehiring employees over the age of 40 terminated as part of the WFR during the "Redeployment Period" and the 60-day "Preferential Rehire Period," as well as outside the aforementioned time periods. (*Id.* at ¶¶50-51, 58.)

Defendants conflate the circumstantial evidence that HP may have intentionally sought to rid itself of older workers with Mr. Cochran's disparate impact theory of liability. Mr. Cochran was terminated pursuant to the WFR  And, although not produced by Defendants in their opposition, presumably it does not explicitly state that its goal is to unlawfully discriminate on age, thus it is alleged to be facially neutral practice that had the unlawful disparate impact on older workers including Plaintiff. As such, it is adequately pled. For all these reasons, the Court must not dismiss Cochran's disparate impact claim under the ADEA.

### E. Plaintiff's Colorado Common Law Wrongful Termination Claim is Viable.

HP concedes that there is a split in this District as to whether wrongful discharge claims based on CADA are cognizable. Courts in this District have found it permissible for a plaintiff to maintain a wrongful discharge claim predicated on CADA violations. *See*, *e.g*., *Kennedy v. Colo. RS, LLC*, 872 F. Supp. 2d 1146, 1149-51 (D. Colo. 2012); *Marcantonio v. Comcast Cable, LLC*, 2016 U.S. Dist. LEXIS 24572, at *3 (D. Colo. Feb. 29, 2016); *Ragsdell v. Reg'l Hous. Alliance*, 2014 U.S.Dist.LEXIS 31982, at *41 (D.Colo. Mar. 12, 2014).

CADA is not an exclusive remedy for employment discrimination or retaliation in Colorado. In *Brooke v. Restaurant Servs., Inc*., 906 P.2d 66 (Colo. 1995), the Colorado Supreme Court held

that the CADA is not the exclusive remedy for employment-related sex discrimination and that the CADA may form the basis for a wrongful discharge in violation of public policy claim. *Id.* at 70. The holding was supported by three factors: (1) federal and state remedies for civil rights violations are cumulative, not exclusive; (2) there was no indication that the Colorado legislature intended to preclude common law claims by enacting CADA; and (3) CADA does not provide for all damages otherwise available in a common-law tort action, including compensatory and punitive damages, and preemption was therefore not appropriate. (*Id.* at 68-70.)

Defendant relies on *Ybarra*, where, contra to *Brooke*, the court held that a wrongful discharge claim premised upon the CADA is not actionable. *Ybarra v. Comprehensive Software Sys.,* 2019 U.S.Dist.LEXIS 9206, at *15-16 (D.Colo. Jan. 18, 2019). The court in *Ybarra* reached this conclusion because CADA, as amended, allowed a plaintiff to recover compensatory and punitive damages and has the right to a jury trial when seeking compensatory or punitive damages. *Id.* (citing Colo. Rev. Stat. §24-34-405(3)(a)). As amended, however, section 24-34-405(3)(a) does *not* mandate that remedies under CADA are the exclusive remedy for civil rights. In fact, CADA now provides compensatory and punitive damages *only* in the case of "intentional" discrimination – i.e., disparate treatment. As amended, section 24-34-405(3)(a) expressly does *not* permit "compensatory and punitive damages when the defendant is found to have engaged in an employment practice that is unlawful solely because of its disparate ***impact***." CO Rev. Stat. §24-34-405(3)(a). *See Brown v. Premier Roofing, LLC*, 173 F. Supp. 3d 1181, 1184 (D. Colo. 2016) (applying Colorado law). Thus, while disparate impact will suffice as a "violation of a clearly expressed public policy" sufficient to establish a wrongful termination claim, only under the wrongful termination claim will Mr. Cochran be able to recover compensatory damages. CO Rev. Stat. §24-34-405(3)(a). For this reason alone, Mr. Cochran's common law wrongful termination claim cannot be dismissed.

### F. Plaintiff's Claims Were Exhausted

Lastly, Defendants argue that allegations relating to Plaintiff's rehiring attempts were not exhausted because at least some of them occurred after the filing of the EEOC charge.

To adequately present a EEOC charge, "the charge document must contain the general facts concerning the discriminatory actions later alleged in the legal claim." *Jones v. Needham*, 856 F.3d 1284, 1290 (10th Cir. 2017); *Perkins v. Federal Fruit & Produce Co., Inc*., 945 F. Supp. 2d 1225 (D. Colo. 2013). "A charge's general facts must be sufficiently related to the claim made in the lawsuit's Complaint such that the facts in the charge would prompt an investigation of the claim.'" *Thompson v. Tyson Foods, Inc*. (D.Kan. Feb. 5, 2018, No. 16-2496-DDC) 2018 U.S.Dist.LEXIS 18309, at *38 (citation omitted). "In determining administrative exhaustion, however, *courts liberally construe EEOC charges*." *Perkins*, *supra*, at 1245 (emphasis added).

Here, without citing a single authority, Defendants argue that Mr. Cochran failed to exhaust his administrative remedies as to (1) the Non-Employer Defendants, and (2) all Defendants after the close of the Preferential Rehiring Period. But, this is incorrect. First, Mr. Cochran's charge specifically lists *all* the Defendants and then indicates he will refer to the Defendants collectively as "HP." Then, the charge generally alleges that Mr. Cochran applied for 32 jobs with Defendants; thus, satisfying the standard for pleading a charge. Second, the fact that Mr. Cochran applied for 32 jobs with HP is sufficient to place HP on notice that Mr. Cochran applied and was applying for job with it after his termination. As such, Mr. Cochran pled facts in his EEOC charge sufficient to give notice of the allegations against Defendants.

## V.   CONCLUSION

For all of the above-stated reasons, Plaintiff respectfully requests the Court to deny Defendants' motion to dismiss. Alternatively, Plaintiff requests leave to amend.

Respectfully Submitted this 29th of July 2022,

Dated: July 29, 2022                    **HOGUE & BELONG**

By */s/Tyler J. Belong*
  Tyler J. Belong, Esq.
  **Attorney for Plaintiff**