IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:20-cv-01235-RM-MEH

DANIEL COCHRAN,

      Plaintiff,

v.

HEWLETT-PACKARD COMPANY; HP ENTERPRISE SERVICES, LLC; HEWLETT-PACKARD ENTERPRISE CO.; HP INC.; and DXC TECHNOLOGY SERVICES, LLC,

      Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT UNDER FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)**

**I.   INTRODUCTION**

The evidence submitted by HP Enterprise Services, LLC ("ES"), HP Inc. (f.k.a. Hewlett-Packard Company ("HP Co.")), and DXC Technology Services, LLC ("DXC") (collectively, the "Non-Employer Defendants") demonstrates none ever employed Daniel Cochran. He nevertheless asks the Court to ignore the evidence and continue his baseless claims against them and his true employer Hewlett Packard Enterprise Company ("HPE"). Such unnecessary cost and waste of time is not warranted because the Court both lacks jurisdiction over the Non-Employer Defendants and Cochran's Third Amended Complaint ("TAC") fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Cochran attempts to tie the varied Defendants together by conclusorily labeling them "HP" and falsely asserting all act as one. Cochran has sued four discrete entities, yet it is undisputed that only HPE employed him at separation and made the decision to terminate him. Flying in the face of *Twombly/Iqbal*, Cochran relies on threadbare recitals and conclusory statements to implausibly

conflate entities with no connection to the employment decisions at issue.

Cochran's substantive claims fare no better. His ADEA disparate treatment claims fail to establish any adverse employment action resulting in any change in tangible employment benefits, while his failure to hire/rehire and termination claims rely on conclusory allegations not entitled to any presumption of truth. Further, Cochran's attempt to recast his disparate treatment claims into one of disparate impact is out of step with the allegations of the TAC. Cochran's opposition fails to articulate how he properly pled a disparate impact claim and instead again relies on allegations of disparate *treatment* to support his disparate *impact* claim. Finally, Cochran's state law wrongful discharge in violation of public policy claim is barred by his ADEA and/or CADA claims. Defendants respectfully request that this matter be dismissed in its entirety.

## II.   ARGUMENT

### A.   The Unrebutted Evidence Demonstrating Cochran's Lack Of Standing To Assert Claims Against The Non-Employer Defendants Should Be Considered.

Although only HPE employed Cochran at termination, he justifies his efforts to sue the Non-Employer Defendants by inaccurately stating that: (1) all Defendants used the same "WFR", a term he does not define; (2) each shareholder of HP Co. received one share each of HPE and HP Inc. after the November 1, 2015 split (nearly four years before Cochran's termination); (3) HPE and HP Inc. shared a corporate headquarters before he left HPE (TAC ¶ 9, n.1); (4) the chief executive officers of HPE and HP Inc. following the split had worked for HP Co.; and (5) the WFR and Preferential Rehire Period policies were adopted by all Defendants. Plaintiff's Opposition to Defendant's Motion to Dismiss TAC, ECF 95 ("Opp.") at p. 3. The uncontradicted Declarations submitted by the Non-Employer Defendants plainly establish, however, that each company is separate and independent, as are their WFR plans, corporate headquarters, chief executive officers, and other employment policies. *See* ECF 53-1, ¶¶ 4, 6–9; ECF 53-2, ¶¶ 4, 5, 7–8; ECF 53-3, ¶¶ 5–

8. Cochran does not meaningfully address this evidence, instead stating summarily he is "under no obligation to rebut" it. He then asks the Court to use Rule 12(b)(6), not Rule 12(b)(1), to consider the jurisdictional issue presented. Opp. at p. 9.

In doing so, Cochran overstates the import of the Tenth Circuit's outdated 1987 decision in *Wheeler v. Hurdman*, 825 F.2d 257 (10th Cir. 1987). Without distinguishing between the case's Title VII and ADEA claims, *Wheeler* held that the determination of an employment relationship is a "mixed" element of jurisdiction and merits not properly decided under a 12(b)(1) standard. However, the assessment of whether this question is jurisdictional depends both on the issue presented and the language of the statute.[1] Unlike *Wheeler*, there is no allegation that Cochran does not fit the ADEA's definition of a statutory employee as to his acknowledged employer (HPE), and he further does not claim he ever worked directly for the Non-Employer Defendants.

Thus, the question presented here is much more like *Murphy v. Allstaff Med. Resources, Inc.*, No. 16-CV-2370, 2017 WL 2224530 (D. Colo. May 22, 2017). There, the Court examined the Fair Labor Standards Act's ("FLSA") statutory language and held that the existence of an employment relationship between or among the parties is a <u>jurisdictional</u> issue subject to Rule 12(b)(1). *Murphy,* 2017 WL 2224530. Notably, the ADEA adopts its administrative structure from Section 216 of the FLSA, making the FLSA the most apt comparator when seeking analogous caselaw absent directly on-point ADEA authority. Cochran, however, ignores *Murphy* and the parallels between the FLSA and the ADEA, and instead wrongly states that *Wheeler* governs.

*Wheeler* is also distinguishable as it addressed a different and far less salient question: whether plaintiff, a partner in a general partnership, was an "employee" as defined by Title VII,

---

[1] The Tenth Circuit modified *Wheeler's* holding in the Title VII context, holding that the question of whether an individual met the statutory definition of an "employee" is a merits-based inquiry under Title VII. *Xie v. University of Utah*, 243 F. App'x 367, 371 (10th Cir. 2007).

3

the ADEA, and the Equal Pay Act.[2] 825 F.2d at 258. *Wheeler* determined that, because the question of whether a general partner has standing to bring a claim as an "employee" under those statutes relied on the application of a statutory definniton to the facts, the question of subject matter jurisdiction was "dependent upon the same statute which provide[d] the substantive claim." *Id*. The present case, however, presents no such concern. Indeed, the question is not whether the Non-Employer Defendants are "employers" within the meaning of the ADEA (29 U.S.C. § 630(b)), and the standing question presented does not turn on the statute providing the substantive claim, as in *Wheeler*. *See Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020) (stating that court's exercise of discretion to consider extrinsic evidence "does not convert a Rule 12(b)(1) motion into a summary judgment motion unless 'resolution of the jurisdictional question is intertwined with the merits'") (citation omitted). Rather, the question presented is whether the Non-Employer Defendants could be held liable under a joint- or single-employer theory, even though only HPE employed Cochran at the time of termination. *Murphy* addressed this question, noting that the FLSA (which is analogous to the ADEA) speaks in clear jurisdictional terms.

The Court should thus evaluate the employment relationship as a jurisdictional requirement and consider evidence outside the TAC. Here, Cochran seeks to meet his burden by using a fictitious label that artificially lumps together distinct corporate entities as "HP," even though there is no factual basis for that label. The label is an empty shell not supported by any plausible factual allegations and, in fact, is directly rebutted by the uncontradicted evidence submitted by the Non-Employer Defendants. The Court should not accept Cochran's false allegations at face value, as doing so would effectively allow him to tie together *any* group of employers, and subject them to

---

[2] Although *Wheeler* addressed the Equal Pay Act of the FLSA as well as the ADEA, Cochran admitted that "this District is even [*sic*] split on whether an employment relationship is a jurisdictional issue in the FLSA context," notwithstanding the *Wheeler* decision. (ECF 59 at 7.)

broad discovery, simply by employing a common moniker and making implausible, unsupported, and conclusory allegations about them. That he employed this tactic after submitting documents to a federal court establishing that HPE employed him is particularly troubling. *See Forsyth*, ECF No. 384-1, Ex. B (Cochran's WFR materials referencing HPE alone as his employer).

Finally, Cochran fails to address that two federal cases relied on Rule 12(b)(1) to dismiss similar ADEA claims against similar defendants. *Forsyth*, No. 5:16-cv-04775, 2020 WL 2524517, at *10–13 (N.D. Cal. May 18, 2020) (dismissing ADEA claims against HP Inc. and HPE for lack of standing under Rule 12(b)(1)); *Enoh v. Hewlett Packard Enterprise Co., et al.*, No. 17-CV-04212-BLF, 2018 WL 3377547, at *13 (N.D. Cal. July 11, 2018) (same). The same result is warranted here.

**B.     This Court Should Dismiss The Non-Employer Defendants Even If Their Uncontradicted Evidence Is Not Considered.**

Even if the Court applies Rule 12(b)(6), as Cochran requests, it should still dismiss the Non-Employer Defendants because Cochran has not adequately alleged that any of them were his joint employer. Instead, the TAC is replete with legal labels and conclusions proffered as "facts." They are no such thing. A statement that Defendants "had the right to control each others' [*sic*] employees," TAC ¶ 11, is a conclusion, not a fact. A statement that the four Defendants are part of a joint "corporate restructuring" resulting in a confusing organizational chart with arrows pointing down from HPE to ES to DXC, TAC ¶ 5–6, is a conclusion, not a fact. These conclusory statements are not supported by *any* factual allegations. Importantly, "the tenet that a court must accept as true all of the allegations contained in a complaint [in ruling on a motion to dismiss] is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. Mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," like those Cochran offers, must be disregarded in evaluating the Defendants' motion. *Id.* (citation omitted); s*ee also Kazazian v. Vail*

5

*Resorts, Inc.*, No. 18-CV-00197-MEH, 2018 WL 2445832 (D. Colo. May 31, 2018) (finding plaintiff, who lumped multiple entities together with a collective label, failed to sufficiently plead employer status under the ADEA). The Non-Employer Defendants should be dismissed.

Additionally, Cochran has made *no* specific factual allegations related to DXC or ES in the TAC and has made no effort to justify the absence of any facts regarding those entities. At a minimum, those two defendants should be dismissed under a Rule 12(b)(6) analysis. And the allegations Cochran made against HP Inc. are conclusory, misleading, and in many instances so completely inaccurate as to be implausible. The deficiency of Cochran's allegations against HP Inc. is perhaps best demonstrated when he analyzes the four factors of the single-employer inquiry. For example, attempting to show "interrelatedness of operations," Cochran claims the Non-Employer Defendants "share the same corporate headquarters." Opp. at 11. He then cites a TAC allegation that only "HPI and HPE's corporate headquarters and nerve centers are located in Palo Alto, California," and further states in a footnote "HPE moved its corporate headquarters from Palo Alto, California to San Jose, California" in March 2019. TAC ¶ 9, n.1. The TAC states nothing about the other Defendants and admits the move occurred months before Cochran's October 2019 termination. He further states the "same high-level employees worked at HP Co. before the split and now work at both HPE and HPI and closely communicate with each other about employees and business operations," which again fails to even mention DXC or ES. The same conclusory argument was rejected in *Forsyth.* 2020 WL 2524517, at *11 ("[S]uch bare allegations of shared management and WFR processes are insufficient to show interrelation of operations" and "Some overlap between the management of corporations, though, is not necessarily inappropriate").

With respect to centralized control of labor relations, Cochran conclusorily alleges joint control by Defendants over employment decisions but offers no facts to support that legal

6

conclusion. Although one case Cochran relies upon notes that this "primary" factor "concerns which entity *made* the employment decision regarding plaintiff," the TAC is devoid of any specific facts that the Non-Employer Defendants exercised any influence over, or for that matter had ***anything*** to do with, HPE's decision to select Cochran for WFR, or with respect to any claimed failure to hire, promote, or train Cochran. *See Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir. 1999); *Kazazian*, 2018 WL 2445832, at *7 (plaintiff "fails to state a claim against" additional defendants "because she does not plead facts demonstrating" those defendants "exercised any control over her employment"). Rather, Cochran points only to the unsupported conclusion that the Defendants "used the same WFR", or that HPE and HP Inc. (not ES or DXC) made decisions "in tandem." TAC ¶ 12. This is insufficient to show centralized control of labor relations. *Forsyth*, 2020 WL 2524517, at *11 (plaintiff did not properly allege joint employer status by failing "to specify how HPE managers and supervisors took part in day-to-day employment decisions about HPI employees (and vice versa).").

In support of the "common management" factor, Cochran alleges only that current HP Inc. and HPE CEOs *previously* worked for HP Co. prior to "split," but those allegations do nothing to show they shared management or control at the time of Cochran's separation. And though Cochran summarily alleges executives "communicated closely" to implement a WFR, and that all Defendants "share common management," he pleads no specific details. Opp. at 11–12. *Kazazian* held that such "general[]" allegations are insufficient to "plausibly assert that both companies were" plaintiff's employer. 2018 WL 2445832, at *7.

Finally, in support of the common ownership and financial control factor, Cochran alleges only that, at the time of the HP Co. split in 2015, each HP Co. shareholder received an equal number of shares of HPE and HP Inc. stock. A stock transaction in 2015 does nothing to show any

7

Non-Employer Defendant acted in concert in 2019. Merely pointing to stock ownership in publicly-traded companies years before his termination is insufficient, and Cochran does not articulate any specific allegation of financial control by one company over the other. *See Florez v. Holly Corp.*, No. 02-1309 JH/WDS, 2004 WL 7337664, at *3 (D.N.M. Nov. 8, 2004) (no common ownership or financial control where defendant did not involve itself in subsidiary's payroll or bills). Moreover, "[t]he Tenth Circuit tends to accord less weight to the element of common ownership or financial control than to other elements of the 'economic realities' standard," making these facts even less probative. *Hunter v. PLB Enters., Inc.*, No. 98-0077, 2000 WL 36739468, at *7 (D.N.M. Oct. 18, 2000); *see also Forsyth*, 2020 WL 2524517, at *12 ("common ownership or control alone is never enough to establish parent liability" and Complaint "fails to plausibly allege that Defendants are an integrated enterprise."). Cochran cannot meet his burden to plausibly allege an employment relationship with any Non-Employer Defendant under Rule 12(b)(6).

Cochran simply does not sufficiently plead that the Non-Employer Defendants were his "joint employer," even under a 12(b)(6) standard. Instead, he resorts to artificially joining Defendants together by labeling them "HP" in a disingenuous attempt to cast his conclusory allegations as facts, TAC ¶ 1, and then asserts the legal conclusion that Defendants have "a special relationship with uniformity and control over each entity's employees evidenced by common employment practices, including the utilization of identical WFRs." Opp. at 13. Again, Cochran's TAC is devoid of a single allegation relating to DXC or ES. As to HP Inc., Cochran fails entirely to allege facts suggesting HP Inc. had any control over *his* employment with HPE or that any HP Inc. employee played a role in any employment decision he challenges, including the decision to terminate his employment with HPE. *Sandoval v. City of Boulder*, 388 F.3d 1312 (10th Cir. 2014).

Finally, notwithstanding the fact that Cochran presents no evidence to dispute the factual

8

statements in the Non-Employer Defendants' declarations, he suggests in the alternative that the Court should permit "limited discovery" to allow him to test those assertions. But this Court rejected the same in *Kazazian,* 2018 WL 2445832, at *7 ("I need not consider the declarations" defendant "attaches to the motion to determine that" plaintiff "fails to allege a joint employment relationship"). Such discovery is similarly not necessary or warranted here.

### C.  Cochran Does Not Challenge The Enforceability Of The Release Agreement.

Defendants' motion seeks the dismissal of any claims by Cochran challenging the enforceability of the Release Agreement offered to him at the time of his WFR because he never signed it, and thus lacks standing to challenge it. In his Opposition, Cochran represents that he is not "bringing any separate claims against Defendants' severance agreements other than to support his age discrimination claims." Opp. at 10 n.6. Defendants thus respectfully request the Court dismiss Cochran's allegations relating to the enforceability of the Release Agreement, and further make clear that Cochran may not seek discovery related to the Release Agreement or to any individual who signed a Release Agreement, as they can have no relevance to Cochran's claims.

### D.  Cochran Fails to State an ADEA Claim Against Any Defendant.

In the TAC, Cochran alleges the following adverse employment actions: (1) his direct supervisor purportedly failed to "support" him in a "promotion to a Master Job Level" [TAC ¶ 24]; (2) his direct supervisor purportedly "removed [him] from a project he had been working on" [*Id.* ¶ 25]; (3) on "two occasions," he purportedly was "denied the opportunity to participate" in a TechFluence career advancement program [*Id.* ¶ 26]; (4) his employment was terminated effective November 1, 2019 [*Id.* ¶ 52]; and (5) he applied for or expressed interest in "40 positions" on or after October 22, 2019, but was not selected for any [*Id.* ¶¶ 56–57].

To avoid dismissal, Cochran baldly asserts that items (1)–(3) above "separately" and "collectively" constitute an adverse employment action. Opp. at 17. There is, however, no case

9

law support for that proposition. In fact, the law is clear that "discrete acts" must individually rise to the level of an "adverse action" in order for a plaintiff's claim to be actionable. *See* Def. Mot. at 15–17. In seeming recognition of this fact, Cochran's EEOC Charge characterizes each of these allegations as a separate claim rather than arguing they "collectively" constitue an adverse action, and the Charge further fails to allege a continuing violation. Quite simply, none of these claims individually rise to the level necessary to constitute an adverse action. *Id.*

Cochran cites *Anderson v. Clovis Municipal Schools* and *Barone v. United Airlines* to argue his allegations must be viewed "liberally" and "in context." Opp. at 16. But *Anderson* makes clear courts "will not consider 'a mere inconvenience or an alteration of job responsibilities' to be an adverse employment action." No. CIV-06-620, 2007 WL 9734086, at *4 (D.N.M. May 31, 2007). *Barone* states an adverse action must be a "***significant*** change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." 335 Fed. App'x 169, 181 (10th Cir. 2009) (emphasis added) (citation omitted). Thus, *Anderson* found more severe allegations than those presented here were insufficient. *See, id.* at *8–11. And *Barone* presented a clearly distinguishable situation in which the employee was presented an immediate ultimatum to either move across the country or resign. 355 Fed. App'x at 181. Cochran's allegations (*e.g.*, his manager failed to "support" him) are not comparable, and his claims as to items (1)–(3) above should be dismissed.

With respect to item (5) above (failure to rehire), Cochran did not plead, as he must, that he met the minimum qualifications for each position. Rather, he proclaims broadly that he was "aptly qualified for each" of the 40+ positions "he applied for with Defendants." TAC ¶ 77. But this conclusory allegation is not entitled to any presumption of truth. *Davis v. BAE Sys. Tech. Sols. & Servs., Inc.*, 764 F. App'x 741 (10th Cir. 2019) ("[Plaintiff's] allegation that his experience and

10

skills matched the position perfectly is therefore conclusory and not entitled to the presumption of truth at the Rule 12(b)(6) stage."). Rather, the *Twombly/Iqbal* standard requires far more, as illustrated by one example from Cochran's TAC. He alleges that he applied for a "Compostable Go-to-market Program Manager position" and was "later informed that the position closed." TAC ¶ 56(ee). It is unclear what this position entailed, much less its minimum qualifications, or whether anyone was even hired for the position. The position "closing" could just as easily mean a decision was made not to hire anyone, and the position was unfilled. As detailed in Defendants' moving brief, Cochran's failure to specifically plead which company he applied to, when he applied, and how he was specifically qualified for each position is fatal to his failure-to-hire claims. Indeed, such a maneuver appears designed to be intentionally vague to avoid a motion to dismiss.

Finally, Cochran's TAC is similarly devoid of sufficient detail on item (4) above (termination of employment). Cochran insists he need not specifically plead he was replaced by a younger person, and instead may plead he was "treated less favorably," and/or that Defendants "intended to discriminate". Opp. at 17. In doing so, Cochran runs head-long into the point: he *does not* adequately plead either of those things. Instead, he alleges only that he "was the oldest person in his work group," and "[o]n information and belief, younger employees … were reassigned to other departments." TAC ¶ 53. Critically, he does not allege whether the unidentified younger employees " assigned" were similarly situated to him in terms of the jobs they performed, their qualifications, or positions to which they were allegedly reassigned. Rather than simply allege that unidentified younger employees were "reassigned," Cochran must "assert facts" demonstrating he was "treated less favorably than other similarly-situated employees." *Hakeem v. Denver Pub. Sch.*, No. 20-CV-0083, 2020 WL 4289422, at *6 (D. Colo. July 7, 2020); *see also Kahler v. Leggitt*, No. 18-CV-3162-WJM-KMT, 2019 WL 3928622, at *7–9 (D. Colo. Aug. 20, 2019) (plaintiff could

11

not rely on conclusory allegation that "less experienced/less qualified" younger individuals were treated favorably). Since Cochran failed to do so, his termination claim should also be dismissed.

### E. Cochran's Allegations of Intentional Discrimination Cannot Support His Disparate Impact Claims, Which Must Be Dismissed Against All Defendants.

Three arguments are at the heart of Defendants' motion to dismiss the disparate impact claims: (1) the TAC does not identify any alleged specific facially neutral practice or policy that had a disparate impact on Cochran; (2) the Complaint includes only allegations of intentional discrimination, *i.e.*, disparate treatment; and (3) Cochran fails to allege how any "neutral employment practice" *caused* a disparate impact. Cochran's Opposition actually *highlights* these deficiencies by identifying three alleged policies/practices he claims had a disparate impact.

- First, Cochran alleges "Defendants have a practice of terminating employees over the age of 40 through the WFR." Opp. at 18. The cited portions of his TAC state, however, that the WFR "*[t]argeted* older employees," that Defendants had a "***strategy*** to eliminate the older members of its workforce," that employees were selected for the WFR "***based*** merely ***on*** age," and that Defendants engaged in the "***systematic*** elimination of" older workers. TAC ¶¶ 46–48 (emphasis added). In other words, the TAC alleges only intentional conduct.

- Second, Cochran relies on TAC allegations of "statements by Defendants' executive employees showing ***animus*** toward employees over the age of 40 years old and the desire to have a younger workforce." Opp. at 18. Again, Cochran points to intentional conduct.

- Third, Cochran alleges Defendants have "a practice of not rehiring employees over the age of 40 terminated as part of the WFR" during the Redeployment or Preferential Rehire Periods. Opp. at 18. Again, he pleads only intentional conduct. TAC ¶ 58.

Alhough Cochran latches onto these allegations in an effort to save his disparate impact claims, they are the very same allegations that he relies on to support his disparate treatment claims, and there is nothing "facially neutral" about these alleged practices. These allegations cannot perform "double duty" to support both disparate treatment and disparate impact claims and, in any event, cannot plausibly state a disparate impact claim. *Schoenhals v. Dowling Coll.*, No. 2:15-cv-2044, 2019 WL 1284259, at *5–7 (E.D.N.Y. Mar. 20, 2019) (factual allegations underlying claim of intentional discrimination cannot also serve as basis for disparate impact claim); *Raytheon Co.*

*v. Hernandez,* 540 U.S. 44, 53 (2003) (Cautioning that "[b]ecause 'the factual issues, and therefore the character of the evidence presented, differ when the plaintiff claims that a facially neutral employment policy has a discriminatory impact on protected classes,' courts must be careful to distinguish between these theories.") (quotation omitted).

Cochran ties his disparate impact claim to the WFR and the rehire periods. But simply labeling terminations implemented under a WFR as a "practice" or "policy" that are "purportedly neutral on their face" is not enough to state a disparate impact claim. Courts have consistently emphasized that plaintiffs must identify a specific facially neutral policy or practice, rather than make broad attacks against decision-making processes. *See Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) (plaintiffs failed to state disparate impact claim where they did not identify "any specific test, requirement, or practice within the pay plan that has an adverse impact on older workers" . . . "it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is 'responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.") (citations omitted). Cochran's argument that, because the WFR "does not explicitly state that its goal is to unlawfully discriminate on age," it is "facially neutral," Opp. at 18, is likewise spurious. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (disparate impact involves "practices that are not intended to discriminate but in fact have a disproportionately adverse effect on [the protected class]."). Cochran alleges ***only*** intentional conduct. His broad attacks on Defendants' alleged "practice of terminating employees over the age of 40 through the WFR" or "not rehiring employees over the age of 40" thus fail to state a disparate impact claim.

As to his (re)hiring claims, the ADEA does not permit hiring-related disparate impact claims by ***applicants***. *Raymond v. Spirit Aerosystems Holdings, Inc.*, 406 F. Supp. 3d 996, 1000

13

(D. Kan. 2019); *Kleber v. CareFusion Corp.*, 914 F.3d 480 (7th Cir. 2019); *Villareal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958 (11th Cir. 2016). Finally, the Supreme Court has made clear that a "plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Texas Dep't of Housing and Comm'y Affairs v. Inclusive Comms. Project, Inc.*, 576 U.S. 519, 543 (2015). Here, Cochran has not alleged any facts demonstrating a causal connection between the alleged "practices" and any purported disparate impact; his disparate impact claim should be dismissed.

### F. Cochran's Wrongful Termination Claim Is Not Cognizable.

Cochran's wrongful termination against public policy ("WDPP") argument hinges on the false notion that the remedies under CADA and Colorado common law <u>must be exactly the same</u> for the common law claim to be barred by CADA. This is not true. As this Court held in *Ybarra v. Comprehensive Software Sys., LLC*, the question is whether CADA (or another statute) provides <u>a</u> remedy, not the exact <u>same</u> remedy. No. 18-CV-01679, 2019 WL 266310, at *8 (D. Colo. Jan. 18, 2019). Cochran's WDPP claim is barred by his CADA claims and subject to dismissal.

Cochran's ADEA claims also bar his WDPP claim. Where a *federal* statute provides remedies for a wrongful termination, "a wrongful discharge claim based on the same underlying facts cannot stand." *Id.* (citing *Caspar v. Lucent Techs., Inc.*, 280 F. Supp. 2d 1246, 1248–49 (D. Colo. 2003) ("pursuit of the wrongful discharge claim in addition to her Title VII claim is contrary to established limitations on the nature and reach of the state law claim … Colorado courts have expressly disallowed its application where a statute provides a wrongful discharge remedy.")). This is true where, as here, facts giving rise to a plaintiff's CADA and federal claims are the same. *Villarreal v. Walmart, Inc.*, No. 19-CV-01722, 2021 WL 1022701, at *5 (D. Colo. Mar 17, 2021); Opp. at 14–18. Thus, Cochran's WDPP claim, it is plainly preempted by his ADEA claim.

14

**G. Cochran Failed To Exhaust His Hiring Claims.**

Cochran's Charge has not exhausted administrative remedies on his hiring claims by just listing certain Defendants, labeling them all "HP," and generically alleging he applied for 32 jobs with "HP" during the 60-day "Preferential Rehire Period." Opp. at 19–20. Even under the most liberal standard, that is insufficient. Cochran must include in his Charge each "discrete employment incident" in order to exhaust. *Hill v. Ser Jobs for Progress Nat'l, Inc.*, No. 19-CV-01851, 2019 WL 5964961, *3 (D. Colo. Nov. 13, 2019). His Charge further says nothing about jobs applied for after the Preferential Rehire Period and fails to name the employer to which he applied; he has thus failed to exhaust as to those jobs, too. Finally, Cochran did not name DXC or ES in his Charge, so the claims against those entities have likewise not been exhausted.

Cochran's Charge does not allege any Defendant but HPE posted a job for which he applied during the Redeployment or Preferential Hiring Periods. Since Cochran's employer was HPE, it logically flows that only HPE would consider him for jobs as part of a Redeployment or Preferential Hiring Period. Cochran's claims are "limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC," but the hiring claims against the Non-Employer Defendants are not reasonably within such a scope and should now be dismissed. *Kahler*, 2019 WL 3928622, at *5.

Respectfully submitted this 12th day of August, 2022.

*s/ Jennifer S. Harpole*
Jennifer S. Harpole
Lukasz Gilewski
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
Telephone: 303.629.6200
Email: jharpole@littler.com; lgilewski@littler.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of August, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Jeffrey L. Hogue
Tyler J. Belong
Jimmie Davis Parker
HOGUE & BELONG, APC
170 Laurel Street
San Diego, CA 92101
jhogue@hoguebelonglaw.com
tbelong@hoguebelonglaw.com
jparker@hoguebelonglaw.com
*Attorneys for Plaintiff*

                *s/ Jennifer S. Harpole*
                Jennifer S. Harpole

4876-1153-0541.10 / 066902-1148